ESTATE OF JORGENSEN: STATE, Appellant, vs. PATRI and another, Executors, Respondents.

*April 8—May 4, 1954.*

2

For the appellant there were briefs by the *Attorney General* and *Harold H. Persons* and *E. Weston Wood,* assistant attorneys general, and *Neil Conway,* inheritance tax counsel, and oral argument by *Mr. Persons, Mr. Wood,* and *Mr. Conway.*

For the respondents there was a brief by *Keefe, Patri, Stillman & Nolan* of Oshkosh, and oral argument by *Charles F. Nolan.*

FAIRCHILD, C. J.  The first important question to be considered is when the inheritance tax becomes due. When a will exists, the distribution of the estate is determined and controlled by the terms, devises, and bequests thereof. In case of intestacy, the rules of the statutes governing the distribution of an intestate estate apply. The law imposing the inheritance tax places it upon any transfer of property "by will or by the intestate laws of this state from any person dying possessed of the property while a resident of the state." Sec. 72.01 (1), Stats. Pronouncement of this rule is found not only in sec. 72.01 (1) but in opinions of this court. The tax is on the transfer of the property at the time of the death of the testator or the intestate. In *Estate of Benjamin* (1940), 235 Wis. 152, 292 N. W. 304, our court decided that the order closing the estate of a decedent does not operate as the transfer of the property, but that the transfer becomes fixed at the death of the decedent. Where the whole estate is disposed of, the transfer must be under testacy or intestacy; it cannot be a mixture of the two. In the *Benjamin Case, supra,* we said, at page 156, "This particular tax is upon the transfer by which the transferee becomes the owner of the property, and that transfer is said to take place at the time of the death of the deceased owner."

Proof of the will of Margaret M. Jorgensen, deceased, and objections were heard in the county court of Winnebago county. Thereafter a stipulation was entered into by the executors and those claiming the estate as intestate, which was approved by the court. The court then found that the decedent was of full age, of sound mind, and under no legal disability at the time she executed her will and granted probate of the will subject to the compromise approved by the

court. Said compromise was entered into pursuant to sec. 318.31, Stats.

Compromises have been dealt with differently in other states than in Wisconsin. In this state it is established that the right to make a testamentary disposition of one's own property is absolute. In his review of the sources from which the rule of the right to dispose of property by will, Mr. Justice WINSLOW, in *Nunnemacher v. State* (1906), 129 Wis. 190, 108 N. W. 627, called to mind the statement of our constitution which expresses the rule of the rights underlying our freedom in enterprise and social and family relations brought into recognition under our organic law. In a concurring opinion at page 226, Mr. Justice MARSHALL said, "among those unalienable rights so forcibly proclaimed and impliedly or expressly guaranteed is that of complete enjoyment of personal acquisitions, subject only to reasonable regulation." This statement was followed by the question, "Why turn aside and test the dignity of individual possessions in that respect by the very system which the change was designed to replace?" And the right to transmit property by descent or by will was held to be "an inherent right protected by the constitution and, though subject to reasonable regulation, cannot be wholly taken away or substantially impaired by the legislature." At page 200 of the opinion, Mr. Justice WINSLOW said:

"That there are inherent rights existing in the people prior to the making of any of our constitutions is a fact recognized and declared by the Declaration of Independence, and by substantially every state constitution. Our own constitution says in its very first article:

" 'All men are born equally free and independent and have certain inherent rights; among these are life, liberty, and the pursuit of happiness; *to secure* these rights governments are instituted among men, deriving their just powers from the consent of the governed.'

"Notice the language, 'to secure these [inherent] rights governments are instituted;' not to manufacture new rights or to confer them on its citizens, but to conserve and secure to its citizens the exercise of pre-existing rights. It is true that the inherent rights here referred to are not defined but are included under the very general terms of 'life, liberty, and the pursuit of happiness.' It is relatively easy to define 'life and liberty,' but it is apparent that the term 'pursuit of happiness' is a very comprehensive expression which covers a broad field. Unquestionably this expression covers the idea of the acquisition of private property; not that the possession of property is the supreme good, but that there is planted in the breast of every person the desire to possess something useful or something pleasing which will serve to render life enjoyable, which shall be his very own, and which he may dispose of as he chooses, or leave to his children or his dependents at his decease. To deny that there is such universal desire, or to deny that the fulfilment of this desire contributes in a large degree to the attainment of human happiness, is to deny a fact as patent as the shining of the sun at noonday. And so we find that, however far we penetrate into the history of the remote past, this idea of the acquisition and undisturbed possession of private property has been the controlling idea of the race, the supposed goal of earthly happiness. From this idea has sprung every industry, to preserve it governments have been formed, and its development has been coincident with the development of civilization. And so we also find that from the very earliest times men have been acquiring property, protecting it by their own strong arm if necessary, and leaving it for the enjoyment of their descendants; and we find also that the right of the descendants, or some of them, to succeed to the ownership has been recognized from the dawn of human history. The birthright of the firstborn existed long before Esau sold his right to the wily Jacob, and the Mosaic law fairly bristles with provisions recognizing the right of inheritance as then long existing, and regulating its details. The most ancient known codes recognize it as a right already existing, and Justice BROWN was clearly right when he said, in *U. S. v. Perkins,* 163 U. S. 625, 16 Sup. Ct. 1073:

" 'The general consent of the most enlightened nations has from the earliest historical period recognized a natural right in children to inherit the property of their parents.' "

Prior to the enactment in 1951 of sec. 318.31, Stats., there was not even a suggestion in the law of this state that parties interested in a testate estate were competent to substitute their will for that of the testator, or that any agreement by interested parties to be carried out as if it were the scheme of the testator was enforceable. It was held in *Will of Rice* (1912), 150 Wis. 401, 136 N. W. 956, 137 N. W. 778, that a will contest could not properly be turned into an action for reformation or rescission since the sole question is whether the paper purporting to be the will of the testator represents his legally declared final wishes as to the post-mortem disposition of his estate.

In 1951 the legislature enacted sec. 318.31, Stats., and interested parties, *i.e.,* legatees, devisees, and heirs, are now authorized to compromise differences between them. In introducing the right to compromise and effectually sanctifying the opportunity to adjust differences between contestants, provision is made, under authorization by the court, "to adjust by compromise any controversy that may arise between the persons claiming as devisees or legatees under such will or wills and the persons entitled to or claiming the estate of the deceased under the statutes regulating the descent and distribution of intestate estates."

At this point it becomes necessary to construe sec. 318.31, Stats., so as to determine its effect upon the method of computing the inheritance tax where, as in the instant case, a contest of a will has been compromised pursuant to that section. Reading said section as authorizing the admission of a will to probate, not as executed by the testator, but as judicially amended, would require us to hold the statute unconstitutional, because such a construction would be against the

fundamental constitutional right to dispose of property by will as discussed above, and no one—the beneficiaries, the heirs, the courts, or the legislature, or all of them together— can rewrite a will so as to effect a distribution other than that provided by the testator.

Prior to the enactment of sec. 318.31, Stats., the public policy of this state did not recognize an agreement to compromise the differences between contestants in a will case as a consideration sufficient to make the agreement enforceable. Sec. 318.31 now provides that such a compromise agreement, approved by the court, will be recognized as a consideration sufficient to warrant the enforcement of the agreement. That section does nothing more than provide the mechanics whereby a compromise agreement under a will, which agreement would have been invalid before the enactment of that section, can be made in open court and thus become a valid and enforceable agreement. It goes without saying that anyone acquiring property as a legatee under a will has, and had before the enactment of this statute, the right to assign the whole or any portion of his property. The point to be noted and the point in issue here is that the legatee must acquire such property before he can assign it. As said by the attorney general, "In such event, there would be no question of anyone rewriting the testatrix's will for what the recipients of her bounty might thereafter do with the property they received from her estate would not be subject to her control." The transfer of a legacy under a will takes place at the moment of the testator's death and is from the testator to the legatee, who takes the entire legacy. Any disposition or assignment of a part or of the whole of the legacy is, thereafter, from the legatee to the contestants. Sec. 318.31 must therefore be construed merely as an authorization to the court to give validity to will-contest compromises which before the

enactment of that statute were invalid in Wisconsin, and under such construction must be held to be constitutional.

Although before the enactment of the compromise section of the statutes, such compromise agreements were against public policy, the legislature has changed that policy. We now follow the new rules set forth in sec. 318.31, Stats., as above construed, but hold that the compromise has no effect upon the inheritance tax. Inasmuch as there must be, in the first place, a transfer of the entire legacy from the testator to the legatee before the whole or any part of it can be yielded up, the computation of the inheritance tax must be made upon the entire legacy the moment it is transferred in its entirety to the legatee. The tax is, therefore, computable on the distribution provided in the will. *Matter of Cook* (1907), 187 N. Y. 253, 79 N. E. 991; *In re Estate of Graves* (1909), 242 Ill. 212, 89 N. E. 978; *Indiana Dept. of State Revenue v. Kitchin* (1949), 119 Ind. App. 422, 86 N. E. (2d) 96; and *Baxter v. Treasurer & Receiver General* (1911), 209 Mass. 459, 95 N. E. 854.

The attorney general calls attention to the states following the rule that an agreement compromising a will contest has no effect upon and does not take the computation of the inheritance tax out from under the rules of descent applicable to the distribution as made by the will, or by the statute in case of intestacy: New York, Massachusetts, Michigan, Illinois, Arizona, California, Indiana, Iowa, New Jersey, New Hampshire, and Ohio. We have already cited cases from some of those jurisdictions. In the recent case of *In re Cress' Estate* (1953), 335 Mich. 551, 56 N. W. (2d) 380, there is a review of the cases. The Michigan court, deciding a similar fact case, in an opinion by Mr. Justice SHARPE, said (p. 565) : "In the case at bar, the tax is computed by reason of transfer of property by will. The compromise agreement

does not change the fact that the entire property in the estate passes by reason of the will, and at the time of the death of the testator. The right of the state becomes fixed at the moment of death, although the value of the taxable interest is fixed at a later date."

It is, therefore, considered that the transfer to be taxed is the transfer made by the will, and that the attorneys' fees of the contestants of the will are not deductible as expenses of administration. The order of the lower court determining the inheritance tax must be reversed.

*By the Court.*—Order reversed, cause remanded for further proceedings consistent with this opinion.

CURRIE, J. (*dissenting in part*). I fully concur with the majority opinion that a will-contest compromise agreement, whereby one or more legatees yield up a portion of the bequeathed estate to the heirs at law, involves a policy question rather than a constitutional one, which policy question has been resolved by the legislature.

There was not presented in *Will of Rice* (1912), 150 Wis. 401, 136 N. W. 956, 137 N. W. 778, the situation where legatees under the will yielded up part of their legacies to the heirs at law in compromise settlement of a will contest, but instead the agreement entered into amounted to a complete remaking of the will, particularly certain trust provisions of the will. The decision, therefore, in that case is not authority for the principle that it is unconstitutional for the legislature to authorize compromise-settlement agreements wherein the legatees agree to yield up a portion of the estate bequeathed to them to the heirs at law.

Under the compromise agreement approved in the instant case the attorney fees of the contestants, amounting to $5,000, were to be paid out of the estate. The effect of the majority

opinion is to disallow such $5,000 as an item of administration expenses to be deducted in arriving at the net estate subject to inheritance tax. Sec. 324.13 (1), Stats., provides in part as follows:

"In a contest upon the probate of any will, . . . the court may, if the contest is necessary or meritorious, allow to the proponent of such will and to the successful contestant in such proceedings a reasonable attorney's fee to be paid out of the estate of the decedent. . . ."

It should be borne in mind that this statute was enacted prior to the adoption of sec. 318.31, Stats. Before that a will contestant, in order to be deemed successful, necessarily had to secure court denial of the propounded will to probate. Now, with the enactment of sec. 318.31, sec. 324.13 (1) should be construed in the light of sec. 318.31. When contestant heirs secure a substantial portion of the estate, as in the instant case where by reason of the instituted contest they secured somewhat in excess of half the estate, the result should be held to be successful rather than unsuccessful. The meritoriousness of the contest is attested to by the fact that the learned trial court approved the compromise whereby the legatee Kogut yielded up slightly more than half the estate bequeathed to him.

The $5,000 attorney fees of the contestants having been approved as reasonable by the trial court, the same should be allowed as a part of the deductible expenses of administration in determining the inheritance tax.

I am authorized to state that Mr. Justice BROADFOOT and Mr. Justice STEINLE concur in this dissenting opinion.