STATE EX REL. GUTBROD, Appellant, v. WOLKE, Sheriff, Respondent.

*Nos. 388, 389. Argued January 8, 1971.—Decided February 5, 1971.* (Also reported in 183 N. W. 2d 161.)

738

For the appellant there was a brief by *Shellow &amp; Shellow* of Milwaukee, and oral argument by *James M. Shellow.*

For the respondent the cause was argued by *Peter A. Peshek,* assistant attorney general, with whom on the brief were *Robert W. Warren,* attorney general, *E. Michael McCann,* district attorney of Milwaukee county, and *Michael D. Guolee,* assistant district attorney.

ROBERT W. HANSEN, J.  Basic to appellant's position on these appeals is the contention that ch. 384 of the Laws of 1969 did not create sec. 161.30, Stats., because it referred to and by its terms amended provisions of sec. 151.07, which statute had, earlier in the same legislative session, been renumbered in ch. 336 of the Laws of 1969.

It is clear that there was in fact an error in the reference by number to the statute which was being amended in enactment of ch. 384.  The sequence of events in the session went as follows:

Chapter 336 of the Laws of 1969 amended sec. 151.07, Stats., and renumbered it as sec. 450.07.[1]  Twenty days after ch. 336 was enacted, ch. 384 of the Laws of 1969 was enacted.[2]  Ch. 384 included a renumbering of secs. 151.07 to 161.30, along with substantial amendments to the sections.  In sum, the legislature acted as though ch. 336 had not been enacted by throughout ch. 384 referring to sec. 151.07, as though it had not been earlier renumbered.

From this sequence of events derive the questions raised that must be answered on these appeals.

*Can this court correct the legislative error as to numbering and construe ch. 384 as referring to sec. 450.07, Stats., rather than sec. 151.07?*

Ch. 384, with its references by number to other statutes left unchanged and uncorrected, is at least ambig-

---

[1] Ch. 336 (Senate Bill 353) was a "trailer" bill to the Kellett Act for reorganization of state government. (Ch. 75, Laws of 1967).  The conceded purpose of ch. 336 was to complete such reorganization of state government by bringing together various statutory provisions relating to the pharmacy examining board under one generic heading.

[2] Ch. 384 made substantial changes in the Wisconsin statutes dealing with dangerous drugs.  It is undisputed that one of the purposes of ch. 384 was to reclassify marijuana and cocaine as

uous in meaning and application. Exactly as appellant contends, without correction of its numbering errors, there are numbers out of sequence, fragments of sentences and penalty provisions standing alone, plus the references to a sec. 151.07, Stats., itself earlier renumbered to be sec. 450.07. Where a statute is clear on its face, there is nothing for a court to construe.[3] When it is not clear on its face as to its meaning and application, the courts will, in fact, must look to the legislative intent in construing the statute.[4]

There is no dispute here as to what the legislature intended to do. In the words of appellant's brief (page 29), "The intent of the legislature was to enact offenses of the possession of dangerous drugs with intent to sell, furnishing dangerous drugs, transporting dangerous drugs and use of dangerous drugs. . . ." So we do not deal with what sensible legal end the legislature sought to accomplish. We deal rather with locating a sensible legal means of accomplishing that purpose.[5] Here there

dangerous drugs rather than as narcotics. To effectuate this conceded legislative intent, ch. 384 moved marijuana and cocaine from the definition of "narcotic drugs," renumbered and amended sec. 151.07 so as to include it within ch. 161, and defined marijuana and cocaine as "dangerous drugs."

[3] *National Amusement Co. v. Department of Revenue* (1969), 41 Wis. 2d 261, 163 N. W. 2d 625.

[4] ". . . In determining the meaning of the language, the court can take judicial notice of the legislative history of acts which are public records. Such material is not determinative, but is sometimes helpful in construing legislative acts. Since the *Moorman* and *Papke Cases* were decided, this court has several times made use of such material to substantiate a construction of the language of an act or to aid in choosing one of two or several reasonable constructions in order to adopt that construction consistent with the purpose of the act. . . ." *Nekoosa-Edwards Paper Co. v. Public Service Comm.* (1959), 8 Wis. 2d 582, 591, 99 N. W. 2d 821.

[5] ". . . It must be presumed as to a written law that some sensible legal end and some sensible legal means of accomplishing that end were in view. Therefore, regardless of how crude and

is no issue as to the legislative intent, and no doubt that correcting a clerical error in numbering is the only means of having the statute serve such purpose. This court has upheld the right to substitute the right word for one clearly wrong in avoiding an absurd result in construing a statute.[6] It is a less serious organ transplant to substitute the right number for one clearly wrong in effectuating an admitted legislative intent and purpose. The error in ch. 384 goes to a number used, not to substance or content. The earlier statute that created the problem, ch. 336, did not enact, amend or repeal. It renumbered. As to such essentially clerical error in numbering references, where the legislative intent is clear and undisputed, a court has the power, and here properly used it, to substitute the right number for the wrong number used in the statute.[7] To permit an error as to a statute

obscure may be the forms of expression used by the legislature, the court should not tire of searching for its purpose and some sensible way of so translating the legislative language as to express it, without having exhausted all judicial power to that end." *State ex rel. McGrael v. Phelps* (1910), 144 Wis. 1, 9, 128 N. W. 1041.

[6] "A statute may be plain and unambiguous in its letter, and yet, giving it the meaning thus suggested, it may be so unreasonable or absurd as to involve the legislative purpose in obscurity. *Rice v. Ashland County,* 108 Wis. 189, 84 N. W. 189. In such case, or when obscurity otherwise exists, the court may look to the history of the statute, to all the circumstances intended to be dealt with, to the evils to be remedied, to its reason and spirit, to every part of the enactment, and may reject words, or read words in place which seem to be there by necessary or reasonable inference, *and substitute the right word for one clearly wrong,* and so find the real legislative intent, though it be out of harmony with, or even contradict, the letter of the enactment. . . ." (Emphasis supplied.) *Pfingsten v. Pfingsten* (1916), 164 Wis. 308, 313, 159 N. W. 921.

[7] "Generally, mere verbal inaccuracies, or clerical errors or misprints will be corrected by the court, in the construction of a statute, whenever necessary to carry out the intention of the legislature as gathered from the entire act. Accordingly, the court may disregard or rectify errors or mistakes in statutes in

referred to, to invalidate a legislative enactment in an area of serious public concern, would indeed "approach a betrayal of judicial duty." [8]

*Does the newly created sec. 161.30, Stats., prohibit the possession with intent to sell and sale of cocaine?*

The construction of ch. 384 as requiring the substitution of a right number for a wrong one means that there is a sec. 161.30, Stats., dealing with the possession of dangerous drugs. However, even with this the fact, appellant argues that such sec. 161.30 fails to create the crime of "illegal possession [of cocaine] with intent to sell." This argument begins, but does not end, with the contention that sec. 161.30 (12) only prescribes penalties; it does not enact the offense or create the crime. That a penalty statute may make an act unlawful is well recognized.[9] Where, as here, the statute imposes a

the use of words, *numbers*, grammar, punctuation, or spelling, in order to give effect to the intent of the legislature. In other words, if the legislative intent is clear, it must be given effect regardless of inaccuracies of language. . . ." (Emphasis supplied.) 82 C. J. S., *Statutes*, pp. 685–687, sec. 342. Affirming the general rule that "a mistake or omission in such recital will not defeat the intention of the legislature," *see: Custin v. Viroqua* (1886), 67 Wis. 314, 319, 30 N. W. 515; *State v. Stillman* (1892), 81 Wis. 124, 51 N. W. 260; *Svennes v. West Salem* (1902), 114 Wis. 650, 653, 91 N. W. 121.

[8] ". . . That it was the legislative intent to compensate occupational disease there can be no question. . . . That legislative purpose should not be destroyed by the literal application of a provision which had a sensible and appropriate place in the law so long as it was limited to compensation for industrial accidents. To permit such a provision to defeat the later manifest legislative purpose would approach a betrayal of judicial duty." *Wisconsin Granite Co. v. Industrial Comm.* (1932), 208 Wis. 270, 275, 276, 242 N. W. 191.

[9] ". . . where the statute either makes an act unlawful or imposes a punishment for its commission, this is sufficient to make the act a crime without any express declaration to that effect; . . ." 22 C. J. S., *Criminal Law*, p. 86, sec. 24 (3).

punishment for the commission of an act *i.e.,* illegal possession of cocaine with intent to sell, such provision is sufficient to make such possession with such intent a crime.[10]

The second phase of the argument on this point is that, if sec. 161.30, Stats., creates a crime, such crime is left fatally undefined. Sec. 161.30 (12) (d), authorizes the imposition of a sentence of not more than five years and a fine of $5,000 or both, upon one who is convicted of the "illegal possession with intent to sell, sale . . . of any dangerous drug. . . ." There is no failure of definition here. "Illegal possession" is described in sec. 161.30 (7). The phrase "with intent to" is defined in sec. 939.23 (4). "Sale" is defined in sec. 161.30 (1) (L).

Finally, appellant argues that, if a crime is created and sufficiently defined, sub. (12) of 161.30, Stats., is not within the exemption provisions of sub. (8) of 161.30, so it would subject all purveyors and prescribers of the drugs involved to criminal prosecution. There is no claim that this issue as to lack of exemption relates in any possible way to the criminal charge brought against the defendant. The issue raised does not apply to and could not prejudice the appellant. We need not here examine substantive provisions of sec. 161.30 which do not apply to the case before us. These are bridges that do not have to be crossed now. It may well be that the legislature will act to clarify the situation, before other subsections of this law are presented to this court by individuals directly affected by their meaning and

---

[10] ". . . The doctrine is well established that where a statute imposes a punishment for the commission of an act such provision is sufficient to make the act a crime without any express provision declaring it to be a crime. [Cases cited.] . . ." *State v. Peterson* (1933), 81 Utah 340, 343, 344, 17 Pac. 2d 925, 926. *See also:* 50 Am. Jur., *Statutes,* p. 439, sec. 414, where it is stated: ". . . It has also been held that where a statute prescribes penalties for a specified act, the penalties necessarily imply a prohibition and make the thing prohibited unlawful, although no express prohibition is contained in the statute."

application. However, it should be noted, even in advance of such legislative clarification, that the crime spelled out in sec. 161.30 is that of "illegal" possession. It would appear a reasonable interpretation that, as long as purveyors and prescribers of drugs comply with the provisions of sec. 161.30, they do not "illegally" possess and hence need no specific exemption. Under the crime as now defined, it would appear that it is only when they fail to comply with the provisions of sec. 161.30, that they could be deemed to unlawfully possess the dangerous drugs described. Arguments as to a greater or lesser immunity than that should be addressed to the legislature, not to the courts.

*Does the specific statute, sec. 161.30, Stats., or the general statute, sec. 161.20, apply as to penalty?*

Sec. 161.30 (12), Stats., is the penalty provision for violation of sec. 161.30, the penalties prescribed ranging from one year to life imprisonment. Sec. 161.20 permits a maximum imprisonment of not more than three years for any offense defined in ch. 161, with the exception of those defined in sec. 161.02, prohibiting conduct related to possession and sale of narcotic drugs. Sec. 161.20 failed to reflect the merging of the dangerous substance section (sec. 161.30) into ch. 161, and appellant argues that, where two statutes relate to the same subject matter and provide for two differing penalties for the same offense, a court may impose only the lesser of the two.

The legislative intent or public purpose of ch. 161 is set forth in sec. 161.001, Stats. It is that those who engage in commercial trafficking in dangerous drugs should be sentenced to substantial terms of punishment, while users of such drugs should be less severely dealt with, the emphasis in the case of the user being upon treatment, cure and rehabilitation. This declaration of the public policy to be served is clearly reflected in the

penalty provisions of sec. 161.30 (12) which provide minimum sentences for simple possession, but increased penalties for one convicted of selling or possession with intent to sell. Sec. 161.30 (12) is a specific penalty provision. Sec. 161.20 is a general penalty provision.

The general rule is that a specific penalty prescribed by a special statute for a particular offense takes precedence over a general provision in a penal code.[11] Where a conflict between a general penalty provision and a specific provision in a specific statute related to the crime of issuing worthless checks, this court held the specific statute to apply.[12] In the case before us now, the situation is analogous and the specific is held to take precedence over the general. Once again, while the fact of conflict is apparent, the intent of the legislature is clear. Sec. 161.30 (12), Stats., effectuates such intent, and since it is the penalty statute that specifically applies to the appellant's alleged criminal misconduct, it is the penalty provision that applies.

*Have police officers and district attorneys been removed from the enforcement of sec. 161.30, Stats.?*

The appellant was placed under arrest for sale and illegal possession of cocaine with intent to sell. The charge against the defendant was brought by the district

[11] "Where a crime is penalized by a special law, the general provisions of the penal code are not applicable. . . ." 24b C. J. S., *Criminal Law*, p. 560, sec. 1979.

[12] "Statutes must be construed together and harmonized. The general statutory rule of construction is when a specific statute and a general statute relate to the same subject matter, the specific statute controls. *Estate of Miller* (1952), 261 Wis. 534, 53 N. W. (2d) 172; *Estate of Kirsch* (1955), 269 Wis. 32, 68 N. W. (2d) 455, 69 N. W. (2d) 495; *Maier v. Racine County* (1957) 1 Wis. (2d) 384, 84 N. W. (2d) 76. Sec. 939.60, Stats., must be considered as a general statute defining felonies and misdemeanors, but not applicable to a specific case when the crime is expressly designated to be a misdemeanor. . . ." *Pruitt v. State* (1962), 16 Wis. 2d 169, 173, 174, 114 N. W. 2d 148.

attorney of Milwaukee county. Appellant claims that these two law enforcement agencies have no jurisdiction as to the enforcement of sec. 161.30, Stats. Appellant is in error. The objection to police and district attorney authority to act in this case is without basis.

It is true that sec. 161.30 (11), Stats., states: ". . . The department [of justice] and the examining board [pharmacy] shall be responsible for the enforcement of this section." However, sec. 161.19 (1) provides for the enforcement of ch. 161 by peace officers and district attorneys, ". . . except those provisions specifically delegated. . . ." The legislative history clearly establishes the legislative intent to be a grant of concurrent authority, not a specific delegation that would remove police and prosecutors from the enforcement of ch. 161 or sec. 161.30.

In 1968, the Governor's Commission on Law Enforcement and Crime recommended, following a study of the problem of the illegal use and trafficking in narcotics and dangerous drugs, that a state agency with supervisory statewide jurisdiction be established to deal with the problems involved in combating the drug menace. In response, ch. 141, Laws of 1969, authorized the department of justice to enforce the provisions of the laws relating to illicit activities in the field of narcotics and dangerous drugs. Sec. 8 of ch. 252, Laws of 1969, codified in detail the jurisdiction of the division of criminal investigation of the department of justice. Included in such grant of jurisdiction was the authority to enforce laws relating to narcotics and dangerous drugs. Sec. 8 of ch. 252 of the Laws of 1969, specifically provides: ". . . Nothing herein shall deprive or relieve local peace officers of the power and duty to enforce those provisions enumerated in sub. (1)." (Sec. 165.70 (2), Stats.) Such sub. (1) includes a specific reference to the Wisconsin statutes governing narcotics and dangerous drugs. Both intent and effect are clear. The delegation of enforcement au-

thority to the department of justice clearly was not intended to remove local peace or law officers from the field of enforcement of laws against narcotics and dangerous drugs. The apparent purpose was to strengthen, not weaken, the efforts to enforce such laws. Concurrent jurisdiction was intended and established. The role of the Milwaukee law officers and district attorney in the present case was entirely proper.

*Does construction of ch. 384 to effectuate the legislative intent deny to the defendant due process of law?*

Judicial correction of a criminal statute to effectuate legislative intent can create a variance between the text as printed and the statute as court construed. While appellant's claim that he is being denied due process is presented in a number of ways, the basic contention is that such variance between text and construction is fatal to due process. Sec. 939.10, Stats., provides that only those acts which are made crimes by statutes constitute crimes. Appellant contends that even correction of a clerical error, by changing a word or, as here, replacing a wrong number with a right one, means that he must not only read the statute as printed, but determine the legislative intent, in determining what conduct has been made unlawful. However, while penal statutes are to be strictly construed,[13] they are not to be so strictly construed as to defeat legislative intent.[14]

The requirement of due process is the requirement of fundamental fairness in procedures followed. Such requirement of fairness does not convert every imper-

[13] *See: State ex rel. Gaynon v. Krueger* (1966), 31 Wis. 2d 609, 619, 143 N. W. 2d 437; *State v. Wrobel* (1964), 24 Wis. 2d 270, 275, 128 N. W. 2d 629.

[14] *See: United States v. Corbett* (1909), 215 U. S. 233, 30 Sup. Ct. 81, 54 L. Ed. 173. *See also:* 21 Am. Jur. 2d, *Criminal Law*, p. 101, sec. 17.

fection into a fatal flaw. Due process does not make a chest cold the equivalent of lung cancer. In the drafting and enacting of criminal statutes that proscribe certain conduct and provide penalties, lawmakers have an obvious responsibility to seek to avoid errors of omission and commission that create obscurity or raise doubt as to what is being done or intended to be done. The due process test is not, however, whether there was an error made or area of doubt created. The fairness test is whether a person of reasonable intelligence would be misled by such error or obscurity into believing that his conduct in a given situation was permitted conduct rather than proscribed or prohibited conduct.

If a person of ordinary intelligence may reasonably be said to have notice that the conduct he contemplates is illegal, denial of due process of law is not involved in his being held criminally responsible for such conduct.[15] Where a person of ordinary intelligence could not reasonably be expected to understand that such conduct on his part was illegal, he is not to be prosecuted for doing what he could not know was proscribed.[16] Fairness requires fair warning of the existence of a crime and the fact of a penalty, but it does not require exact knowledge of all relevant criminal provisions governing the particular act he contemplates doing.[17] A molehill is not

[15] 21 Am. Jur. 2d, *Criminal Law*, p. 99, sec. 17; 22 C. J. S., *Criminal Law*, pp. 67–69, sec. 24 (2).

[16] *Bouie v. Columbia* (1964), 378 U. S. 347, 84 Sup. Ct. 1697, 12 L. Ed. 2d 894.

[17] "The constitutional vice, in a vague or indefinite statute, is the injustice to the accused in placing him on trial for an offense of whose nature he was given no fair warning. . . .

"Generally, under our system of criminal law, an individual is only punished when he has the requisite criminal intent accompanying the performance of the act. To have this requisite intent, the individual must be aware that what he is doing is wrong. [Case cited.] But, this is not to say that he must have exact knowledge of the relevant criminal provisions governing his conduct. . . ." *Johnson v. United States* (8th Cir. 1969), 410 Fed. 2d 38, 47.

to be made into a mountain, and even a dozen molehills are not, by the process of addition, to be considered mountain-sized. The fairness test of due process requires only that the statute convey "sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices." [18]

Nor is this, as appellant claims, the changing of a statute by a court to carry out an intent of the legislature. The statute is not changed so as to create a crime or add or subtract an essential element thereof. We do not enlarge the reach of enacted crime nor alter the incriminating components as prescribed and proscribed by the legislature. [19] The only change is as to a number incorrectly used. Substitution of a right number for an obviously and admittedly wrong one used is not creation of a crime by intendment. Applied to appellant, charged with illegal sale and illegal possession of cocaine with intent to sell, the claim of denial of due process fails. The unlawfulness of appellant's conduct, measured by "common understanding and practices," was clear to him as to any person of ordinary intelligence. He does not claim that he was misled. He cannot be sustained in claiming he could have been. The possession and sale of cocaine have been illegal in Wisconsin since 1935. (*See* ch. 306, Laws of 1935.) In fact, receiving and selling cocaine have been crimes against the United States since 1909. Undisputed and uncorrected portions of sec. 161.30, Stats., refer to cocaine no less than four times. The statute defines and lists cocaine as a dangerous substance. The statute prohibits and provides a penalty for "Any person who is convicted of illegal possession with

[18] *United States v. Petrillo* (1947), 332 U. S. 1, 8, 67 Sup. Ct. 1538, 1542, 91 L. Ed. 1877. *See also: United States v. Woodard* (7th Cir. 1967), 376 Fed. 2d 136, 140, where it is stated: "The constitution does not require impossible standards of specificity in penal statutes."

[19] *See Morissette v. United States* (1952), 342 U. S. 246, 72 Sup. Ct. 240, 96 L. Ed. 288.

intent to sell, . . ." The clear references to cocaine as a dangerous substance, the prohibition as to sale or illegal possession with intent to sell, and the penalty provisions gave fair warning to all, including the appellant, that sale and illegal possession were crimes in Wisconsin. An after-the-fact discovery by diligent counsel of a technical error or errors does not sustain the claim that appellant or anyone else could have been led to believe that sale or illegal possession of cocaine was no longer a crime in this state. We repeat that the court was entitled, in fact, obliged, to correct the error relating to renumbering in ch. 384—that sec. 161.30, Stats., creates the crime and provides the penalty for sale and illegal possession of cocaine with intent to sell—that there is no insult to due process in such correction and construction.

*By the Court.*—Orders affirmed.

BEILFUSS, J., took no part.