ESTATE OF TROJAN: TROJAN (Raynald), Executor, and others, Appellants, v. TROJAN (Jean), General Guardian, and others, Respondents.*

*No. 188. Argued November 29, 1971.—Decided January 4, 1972.*
(Also reported in 193 N. W. 2d 8.)

_____

\* Motion for rehearing denied, with costs, on February 29, 1972.

294

For the appellants there were briefs by *deVries, Vlasak & Schallert,* and *Robert W. Swain, Jr.,* all of Milwaukee, and oral argument by *Mr. Swain.*

For the respondent Jean W. Trojan, general guardian, there was a brief by *Kenneth J. Phillips* and *Bernard F. Mathiowetz,* both of Milwaukee, and oral argument by *Mr. Mathiowetz.*

For the respondent Mark M. Camp, guardian *ad litem,* there was a brief and oral argument by *Mark M. Camp* of Wauwatosa.

For the respondent Amy Trojan, executrix, there was a brief and oral argument by *Robert J. Beaudry* of Milwaukee.

ROBERT W. HANSEN, J. This appeal begins with a challenge to the constitutionality of the Wisconsin statute authorizing compromises of conflicting claims in probate cases, and ends with a dispute as to the respective role and rights of a guardian *ad litem* for a minor child and a general guardian for such child, particularly one

whose interests are adverse to that of the child. In between, certain issues as to procedure and statutory construction are raised. Each will be considered separately.

*Constitutionality of statute.*

In this state a specific statute provides that the court in probating a will may authorize "the person or persons named as executors" in one or more instruments purporting to be the last will and testament of a person deceased, to "adjust by compromise" any controversy that may arise between the persons "claiming as devisees or legatees under such will or wills" and "the persons entitled to or claiming the estate of the deceased under the statutes regulating the descent and distribution of intestate estates." (Sec. 318.31 (2), Stats.) The attorney for the general guardian of the child, Janet, contends in effect that this section and the entire compromise statute should be held unconstitutional.

It is true that, before the enactment by the legislature of the law authorizing compromise agreements in probate cases, this court had held that a compromise agreement in a will contest situation was not to be permitted, such adjustment of conflicting claims being considered to be an invasion of the right of the testator to dispose of his property.[1] Clearly, sec. 318.31, Stats., overruled such cases by authorizing such compromise agreements, providing that certain procedures were followed and the court approved the agreement.

However, this issue of the constitutionality of this statute has been before this court, and the constitutionality of the statute upheld.[2] It is true that the prin-

[1] *Estate of Staab* (1918), 166 Wis. 587, 590, 166 N. W. 326. *Will of Rice* (1912), 150 Wis. 401, 445, 446, 136 N. W. 956, 137 N. W. 778.

[2] *Estate of Jorgenson* (1954), 267 Wis. 1, 8, 9, 64 N. W. 2d 430. *See also:* 37 Marquette L. Rev. (1953), 92, *The Right to Dispose of Property by Will*, by Arthur Scheller, Jr.

cipal bone of contention in *Jorgenson* was: At what point in time is the inheritance tax to be computed. However, the case involved a compromise agreement entered into and approved by the court during a will contest (and before admission of the will to probate). The tax issue aside, the court in *Jorgenson* was required to determine the constitutionality of the compromise agreement statute, and it upheld the law, stating, in relevant part:

". . . The transfer of a legacy under a will takes place at the moment of the testator's death and is from the testator to the legatee, who takes the entire legacy. Any disposition or assignment of a part or of the whole of the legacy is, thereafter, from the legatee to the contestants. Sec. 318.31 must therefore be construed merely as an authorization to the court to give validity to will-contest compromises which before the enactment of that statute were invalid in Wisconsin, and under such construction must be held to be constitutional." [3]

While it had not done so earlier, in *Jorgenson* this court viewed an agreement between beneficiaries and heirs as to what each would receive as not changing or modifying the will of the testator. Rather it viewed the changes effected as to who will receive what as relating to the right of legatee or heir to do what he will or elects with what he has received under the will or by operation of law. As another state appellate court has put it, ". . . The changes wrought in the disposition of the property are not the result of changes in the will, but of concessions by the beneficiaries under the will to the heirs at law or among themselves as to the disposition to be made of the interests granted by the will. . . ." [4] So viewed, sec. 318.31, Stats., is constitutional, and this court has, in *Jorgenson,* so held.

---

[3] *Id.* at pages 8 and 9.
[4] *Ellis v. Hunt* (1917), 228 Mass. 39, 43, 116 N. E. 956.

*Legatees v. heirs at law.*

Even if sec. 318.31, Stats., is constitutional, counsel for the general guardian argues that no agreement under it can be reached or approved until it is determined whether the deceased died testate or intestate. As counsel states the proposition: "The statute contemplates either testacy under the Will or intestacy in default of or by virtue of invalidity of a will. The claims are adversary. They cannot coexist." So, it is argued, until a will is admitted to probate, no one named in the document can claim the status of legatee. Once it is admitted, there is no one any longer entitled to the status of heir at law under statutes regulating distribution of intestate estates. A dispute between legatees and heirs at law could not exist, because they cannot coexist. And, without a judicial determination of heirs at law, the right of anyone to be termed such is without certified certainty. There would be little left of the statute if this construction were adopted. To require that all rights under a proposed will be established and all claims of heirship be adjudicated before a compromise of claims is allowable would not only narrow the area of controversy, but would eliminate the incentive to compromise. This interpretation would likewise destroy the purpose of compromise: *i.e.,* to avoid the costs and risks of litigating the issues in dispute. The statute involved, sec. 318.31 (2), does not permit, much less require, such interpretation. Its reference is to the right of executors to compromise controversies involving "persons claiming as devisees or legatees" and "persons entitled to or claiming the estate of the deceased" as heirs at law. In the case before us, the mother, brother and sister, named in the will and signing the compromise agreement, are in the category of claimants under the will, while the minor child, Janet, is in the category of one "claiming the estate of the deceased under the statutes

regulating the descent and distribution of intestate estates."

*Representation by guardian.*

At the time the compromise agreement was entered into, the minor child, Janet, was represented by a court-appointed guardian *ad litem,* who signed the compromise agreement for and on her behalf. The trial court held that this representation by a court-appointed guardian *ad litem* was not compliance with the statute involved. We hold to the contrary, and find three statutes that must be reviewed in determining whether a guardian *ad litem* may act on behalf of his minor in negotiating and executing a compromise agreement of the ward or minor's claim as an heir at law in a will-contest case.

The general statute as to guardian *ad litem's* role in settlement of disputed claims is sec. 269.80 (1), Stats., providing in pertinent part: "A compromise or settlement of an action or proceeding to which a minor or mentally incompetent person is a party may be made by his guardian ad litem with the approval of the court in which such action or proceeding is pending."

The subsection of 318.31, Stats., dealing with guardians is sec. 318.31 (3) providing: "Where a person subject to guardianship is a necessary party to a compromise under this section he shall be represented in the proceedings by his guardian or by a special guardian appointed by the court, who shall in the name and on behalf of the party he represents make all proper instruments necessary to carry into effect any compromise that is sanctioned by the court." (It should be noted that sec. 319.43, Stats. 1955, defining "special guardians" has been repealed. In its place sec. 319.15 creates a "temporary guardian" and defines the duties of such guardian.)

Also relevant to the situation here is sec. 324.29, Stats., dealing with appearances and how made, pro-

viding: "(1) . . . Every person under disability shall appear and conduct or defend by his guardian ad litem, who shall be an attorney, or by the general guardian of his property, who may appear by attorney; but a guardian ad litem shall be appointed in all cases where the minor or incompetent has no general guardian of his property, or where such general guardian fails to appear on his behalf, or where the interest of the minor or incompetent is adverse to that of such general guardian. . . ."

It is to be noted that at the time the compromise agreement was executed, not only was the child represented by a court-appointed guardian *ad litem* but, also, in the words of sec. 324.29, Stats., such minor had ". . . no general guardian of [her] property," so there is, on the issue here raised, no contrasting of the respective rights under this section of a guardian *ad litem* and general guardian where both are present. Where this is the situation, we read secs. 269.80 (1), 318.31 (3) and 324.29 (2), as empowering the guardian *ad litem* to act for and on behalf of his minor or ward in securing and executing and submitting for court approval a settlement of the minor's claims in such estate. Black's Law Dictionary lists "guardian ad litem" as one of the classifications of "guardian." [5] Concededly this is a broad definition, but given the three statutes and the fact situation at the time of the compromise, we hold the statutory requirement of representation of the minor by a "guardian" was complied with by the participation and consent of the court-appointed guardian *ad litem*.

We are aided to this broader definition of the reference to "guardian or special guardian" in sec. 318.31 (3), Stats., by this court's holding that it is not required to give a statute an interpretation ". . . so unreasonable

---

[5] Black's Law Dictionary (rev. 4th ed. 1968), page 834.

or absurd as to involve the legislative purpose in obscurity. . . ." [6] Here it is clear that the legislature, not only insists upon the appointment of a guardian *ad litem* to represent a minor child where there is no general guardian, but goes further to require such appointment ". . . where the interest of the minor or incompetent is adverse to that of such general guardian. . . ." [7] In the case before us, at the time of the compromise agreement, not only was there no general guardian but the one, subsequently appointed and presently challenging the action of the guardian *ad litem* on behalf of the child, had, when her right to intervene was upheld and challenge later upheld, interests adverse in some measure to those of the child.

At the time of her seeking appointment as general guardian, and at the time of her seeking to have set aside the compromise agreement, as well as at the time the compromise agreement was reached, the respondent sought dower rights as the lawful widow of the deceased, whom she had married in Mexico on the same day that she had secured a divorce in Mexico from her former

[6] "A statute may be plain and unambiguous in its letter, and yet, giving it the meaning thus suggested, it may be so unreasonable or absurd as to involve the legislative purpose in obscurity. In such case, or when obscurity otherwise exists, the court may look to the history of the statute, to all the circumstances intended to be dealt with, to the evils to be remedied, to its reason and spirit, to every part of the enactment, and may reject words, or read words in place which seem to be there by necessary or reasonable inference, and substitute the right word for one clearly wrong, and so find the real legislative intent, though it be out of harmony with, or even contradict, the letter of the enactment. A thing which is within the intention of the lawmakers and by rules for construction can be read out of it, 'is as much within the statute as if it were within the letter.'" [Citations omitted.] *Pfingsten v. Pfingsten* (1916), 164 Wis. 308, 313, 159 N. W. 921, quoted with approval in *State ex rel. Gutbrod v. Wolke* (1971), 49 Wis. 2d 736, 743, 183 N. W. 2d 161.

[7] Sec. 324.29 (1), Stats.

husband, a resident of New York state. The denial of her claim to rights as a widow and the court holding that her marriage to Walter Trojan was void did not take place until more than a year after she sought to intervene and object to the compromise agreement. The consideration given by her to her claim of rights as widow, at least along with concern for the rights of the child, Janet, is clearly shown by the following colloquy between her and the court:

"*Mrs. Jean W. Trojan:* My first idea was that I don't think this is enough.
"*Court:* Why don't you think it is enough?
"*Mrs. Jean W. Trojan:* Because I was told right along it would be all for us or nothing, and I would rather go for all because Janet is—
"*Court:* This is not your money. This is your child's money that you—
"*Mrs. Jean W. Trojan:* I know.
"*Court:* I shouldn't say gambling with it, but that's what it comes down to."

The reference by the respondent to "all for us or nothing" clearly refers to both her claim to being a lawful widow and her daughter's claim to being a child of the deceased. This court has said that ". . . it would be a dangerous practice to set aside the person charged with the duty of protecting the infant's interests, upon the opinion of . . . such general guardian . . . ." [8]

---

[8] ". . . Cases may arise where the proceedings of the guardian *ad litem* are so obviously illy advised, and not in the interest of the infants, as to require the interposition of the court for their protection; but where the only objection to proceedings is raised by the adverse party, or a general guardian, however eminent and honorable, appointed at the request of such party, apparently for the purpose, among others, of preventing a review of a judgment in his favor, it would be a dangerous practice to set aside the person charged with the duty of protecting the infant's interests, upon the opinion of such party, or her attorney, or such general guardian, that the appeal is not meritorious . . . ." *Tyson v. Tyson* (1896), 94 Wis. 225, 231, 68 N. W. 1015.

Where the "all for us or nothing" insistence reflected the general guardian's claim to a share of the estate as a widow, as well as concern for the interests of the child, she was ". . . not so circumstanced as to properly represent in court the interests of such infant." [9] This would be as true if she had been appointed and had been serving as general guardian, along with the court-appointed guardian *ad litem,* at the time of entering into the compromise agreement. Where she had not been so appointed and was not then so serving, the dual purpose of her objecting merely reinforces the interpretation given the applicable statutes that, at the time of the compromise agreement, being entered into and approved by the court, that the representation of the child by the guardian *ad litem* was all that was required. That being so, the order setting aside the compromise agreement because the child was not then represented by a subsequently appointed general guardian is reversed.

*By the Court.*—Order reversed.

---

[9] "However much a person may be inclined by nature to protect the interests of an infant, when such person is an adverse party in fact, or represents, in whole or in part, such adverse party, he is not so circumstanced as to properly represent in court the interests of such infant." *Id.* at page 231.