IN the MATTER OF the ESTATE OF Helen GOLL, Deceased: Wisconsin DEPARTMENT OF REVENUE, Respondent-Cross Appellant,

v.

FIRST BANK (N.A.), As Personal Representative of the Estate of Helen Goll, Shriners Hospital for Crippled Children and Wisconsin Masonic Home, Inc., Co-Appellants-Cross Respondents.

Court of Appeals

*No. 91-0915. Submitted on briefs December 23, 1991.—Decided February 26, 1992.*

(Also reported in 481 N.W.2d 685.)

On behalf of the co-appellant and cross-respondent, First Bank (N.A.), as personal representative of the estate of Helen Goll, the cause was submitted on the briefs of *F. William Haberman* of *Michael, Best & Friedrich* of Milwaukee.

On behalf of the respondent and cross-appellant, Wisconsin Department of Revenue, the cause was submitted on the briefs of *James E. Doyle,* attorney general, and *Robert W. Larsen,* assistant attorney general.

On behalf of the co-appellant and cross-respondent, Shriners Hospitals for Crippled Children, the cause was submitted on the briefs of *Allan E. Iding* and *Barbara J. Janaszek* of *Whyte & Hirschboeck S.C.* of Milwaukee.

On behalf of the co-appellant and cross-respondent, Wisconsin Masonic Home, Inc., the cause was submitted on the briefs of *Thomas W. Godfrey,* of *Godfrey, Trump & Hayes* of Milwaukee.

Before Nettesheim, P.J., Anderson and Snyder, JJ.

NETTESHEIM, P.J. Helen Goll (Helen) executed a will in 1977 and a later will and codicil in 1980. The probate court approved a compromise agreement between the competing heirs under the two wills. The compromise agreement admitted Helen's 1977 will and declared Helen's 1980 will and codicil invalid. The issue on appeal is whether the probate court's admission of Helen's 1977 will to probate requires, as a matter of law, that the inheritance taxes be assessed under that will.

The probate court held that the inheritance taxes should be assessed under the last *valid* will executed by Helen, and the court directed further proceedings on this question. Two legatees under Helen's 1977 will and the personal representative appeal. We conclude that the inheritance tax must be assessed under the will admitted to probate. We reverse the probate court's ruling. We remand for any further appropriate and necessary proceedings.

## FACTS AND PROCEDURAL HISTORY

The facts of this case, while somewhat lengthy, are straightforward and are not disputed. On June 13, 1977, Helen executed a will in which, after making certain specific bequests to her husband, Frank Goll, she bequeathed ninety percent of the estate residue to the Shriners Hospital for Crippled Children (Hospital) and ten percent of the residue to the Wisconsin Masonic Home, Inc. (Home).

On September 18, 1979, Frank executed a will which bequeathed one-half of his estate to a marital trust for Helen's benefit. Frank's will also granted Helen a general power of appointment over the marital trust which Helen could exercise in her will. If Helen did not exercise the power of appointment in her will, Frank's will, like Helen's, bequeathed ninety percent of the marital trust's assets to the Hospital and ten percent to the Home.[1] Since Helen's will predated Frank's, Helen's will did not

---

[1]Frank's will also created a separate trust for Helen's benefit during her lifetime funded by the other half of his estate. Upon Helen's death, the corpus of this trust was bequeathed on the same basis as the marital trust—ninety percent to the Hospital and ten percent to the Home.

reference the power of appointment over the marital trust granted by Frank's will.

Frank died on April 24, 1980. Gloria Mandella, a neighbor of the Golls, was appointed personal representative.

On May 13, 1980, shortly after Frank's death, Helen executed both a new will and a codicil. In addition to other provisions in this new will, Helen bequeathed her residence to Mandella. Otherwise the distribution scheme of this will was essentially the same as Helen's 1977 will: ninety percent to the Hospital and ten percent to the Home.

The codicil, however, dramatically altered this distribution scheme. By the codicil, Helen exercised the power of appointment granted by Frank's will and awarded the assets of the marital trust to Mandella, thus eliminating the Hospital and the Home as beneficiaries of Helen's estate.

Helen died on September 24, 1983. Without notice to the Hospital or the Home, Mandella offered Helen's 1980 will and codicil for probate. The court, the Honorable John Buckley presiding, ordered the documents admitted for probate. Mandella was named personal representative. When the Hospital and the Home learned of this action, they sought to vacate the order. The court granted this request. At the same time, the Hospital and the Home filed objections to the 1980 documents, contending that Helen was incompetent when she signed them, or that Mandella had procured the documents through undue influence.[2] Instead, the Hospital and the

---

[2]The Hospital and the Home also alleged that a purported "Revocation of Will" executed by Helen on October 4, 1979 revoking her 1977 will was invalid on the same grounds. A relative of Helen's made similar objections.

Home offered a copy of Helen's 1977 will for probate.[3]

Pending resolution of these disputes, the probate court revoked Mandella's appointment as personal representative of both estates and instead appointed First Bank (N.A.) as personal representative.

To complicate matters further, Mandella disclosed for the first time in July 1984 that she was in possession of certain municipal bearer bonds which had been owned by Frank. Those bonds had a face value of approximately $3,000,000. Mandella contended that Frank had made an irrevocable gift of the bonds to her in July 1979. The personal representative challenged Mandella's claim and sought to secure the property for Frank's estate.

Thereafter, the contesting parties conducted many depositions and investigations concerning these various disputes. Finally, in March 1986, about two and one-half years after Helen's estate was opened, in an effort to resolve all conflicts, the parties entered into two compromise agreements—one in Frank's estate and the other in Helen's estate. By these compromises, the parties proposed to the probate court that Helen's 1980 will and codicil were invalid and that Helen's 1977 will should be admitted to probate. In addition, Mandella agreed to return the bonds to Frank's estate and to pay Frank's estate $1,481,000, representing the income and redemption proceeds received by Mandella while the bonds were in her possession. In exchange, Mandella received Helen's residence and a cash payment of $2,281,100. The Hospital received ninety percent and the Home ten percent of the estate residue.[4]

Pursuant to the requirements of sec. 879.59(5) and (6), Stats., the contesting parties presented the proposed

---

[3]The original of Helen's 1977 will apparently is lost.

[4]The compromise settlements also contained other provisions not directly relevant to the issue on appeal.

compromise agreements to the probate court, the Honorable Marianne Becker presiding. After taking evidence and proof as to the execution and validity of Helen's 1977 will, Judge Becker approved the settlement agreements and admitted the will to probate.

With Helen's 1977 will admitted to probate under the approved settlement, the personal representative then prepared the estate's inheritance tax return on the basis of that will. Since all the assets passed to charities, no inheritance tax was due. The Wisconsin Department of Revenue (department), however, took the position that the inheritance tax should be computed on the basis of Helen's 1980 will and codicil, assessing an inheritance tax of $1,257,134.20, including certain interest assessments.

The personal representative then petitioned the probate court, the Honorable Willis J. Zick presiding, for a redetermination of the inheritance tax.[5] The court denied both the personal representative's request for a determination of the inheritance tax under the 1977 will and the department's contention that the tax should be assessed under the 1980 will and codicil. Instead, the court concluded that even though the compromise agreements were binding as between the parties for purposes of the eventual distribution of the estate, the inheritance tax was to be computed on the basis of Helen's last valid testamentary disposition. The court fixed a time by which the department and the parties were to file objections to either the 1977 or 1980 testamentary instruments, and the court indicated it would then conduct further proceedings. This ruling prompted the personal representative, the Hospital and the Home to petition the court of appeals to review the probate court's nonfi-

---

[5] Judge Becker recused herself from proceedings concerning the inheritance tax issue.

nal order. The department responded as cross-appellant with a similar petition. We granted these requests.

## ANALYSIS

In *Estate of Jorgensen,* 267 Wis. 1, 9–10, 64 N.W.2d 430, 434–35 (1954), the Wisconsin Supreme Court held that when a will is admitted to probate pursuant to a court-approved compromise settlement, inheritance taxes are to be assessed pursuant to the distributions in such will, not the distributions in the compromise agreement.

The department properly notes, however, that the facts of *Jorgensen* are different from those here. In *Jorgensen,* the deceased bequeathed the residue of the estate to a non-relative. Relatives of the deceased objected to the admission of the will to probate. Eventually the parties resolved their dispute by a compromise agreement which allowed the disputed will to be admitted to probate. The probate court approved the compromise agreement. Later, the probate court conducted a hearing regarding the assessment of the inheritance tax. The court ruled that the tax should be assessed under the terms of the compromise agreement and not under the terms of the will. The state challenged this ruling on appeal.

The supreme court reversed the probate court's ruling. The court first noted that the enactment of sec. 318.31, Stats. (presently, sec. 879.59, Stats.) in 1951 changed the prior law which precluded such compromises.

The supreme court then considered how a compromise agreement under the statute affected the inheritance tax assessment. The court reasoned:

that the legatee must acquire the property [of an estate] before he [or she] can assign it.

. . ..

We now follow the new rules set forth in sec. 318.31, Stats., as above construed, *but hold that the compromise has no effect upon the inheritance tax.* Inasmuch as there must be, in the first place, a transfer of the entire legacy from the testator to the legatee before the whole or any part of it can be yielded up, the computation of the inheritance tax must be made upon the entire legacy the moment it is transferred in its entirety to the legatee. The tax is, therefore, computable on the distribution provided in the will.

*Jorgensen,* 267 Wis. at 8-9, 64 N.W.2d at 434 (emphasis added).

The department argues that the phrase, "the compromise has no effect upon the inheritance tax," from the above quote requires that the inheritance tax in this case must be assessed upon Helen's 1980 will and codicil. The department, however, reads the phrase too narrowly. As a result, the department overlooks the context of the phrase and thus misinterprets the thrust of the supreme court's holding.

██

*Jorgensen* does not say that the *ultimate* distribution of the property under the compromise controls the inheritance tax determination. Rather, *Jorgensen* holds that *the distribution under the will admitted to probate controls the inheritance tax determination.* This is precisely what the personal representative, the Hospital and the Home argue for in this case. Thus, *Jorgensen* governs this case.

The department argues, however, that the compromise agreement cannot govern the inheritance tax because the department was not a party to the agree-

.ment. We disagree because it is not the agreement which obligates the department; rather, it is the statute.

Section 879.59(1) Stats., which recognizes compromise agreements, speaks of controversies between "claimants" to the estate and "all other parties . . . who claim an interest in the estate and whose interests are affected by the proposed compromise." The department makes no claim that it qualifies as a "claimant" or "party" under this statute. To the contrary, the department conceded the validity of the compromise agreement in the probate court and restates that concession on appeal. Although the department does not so state, we assume this concession is based on *Estate of Sharp,* 63 Wis. 2d 254, 217 N.W.2d 258 (1974), which holds that the state does not have the power to intervene in estate proceedings, but is nonetheless bound by the probate court proceedings. *Id.* at 263–64, 217 N.W.2d at 263. Thus, the mere fact that the department was not a party to the compromise agreements does not mean that it is not bound by the legal effect which the statute gives to such agreements if they are approved by the probate court.

We also reject the department's contention that our holding gives the parties unfettered ability to validate or invalidate testamentary instruments by their compromise agreements. The department overlooks that such agreements are subject to the approval of the probate court. *See* sec. 879.59(5) and (6), Stats. This requirement not only assures that the interest of all claimants and interested parties are well served by the agreement but also gives the probate court the opportunity to ferret out sham agreements and pretended controversies. Here, there is no showing or claim that the compromise agree-

ments between the competing heirs were a sham or that the disputes between them were not genuine.

The department also contends that *Estate of Banta,* 273 Wis. 328, 332, 77 N.W.2d 730, 733 (1956), and its statement that "parties may not bind the state to their own stipulation of value of property" for inheritance tax purposes controls this case. In *Banta,* a mother and her son contracted for the sale of stock at a stated price. However, the actual transfer of the stock and the son's payment were not to occur until after the mother's death. By that time, the value of the stock had substantially increased. The inheritance tax statutes under scrutiny in *Banta* expressly provided that the tax imposed was to be based upon the clear market value of the property. *See* sec. 72.01(8), Stats. (1955). On the basis of this statutory authority, the supreme court made the remark upon which the department relies.

We reject the department's argument that *Banta* controls for two reasons. First, *Banta* is a valuation case, whereas the instant case is a will contest case. We question *Banta*'s application on this threshold basis.

Second, and more importantly, we conclude that *Banta* supports rather than detracts from our holding in this case. The supreme court's decision in *Banta* is squarely premised upon the statutes which required the inheritance tax to be imposed upon the clear market value of the property. *Banta,* 273 Wis. at 331, 77 N.W.2d at 732. Likewise here, the personal representative, the Hospital and the Home squarely rest their position on sec. 879.59, Stats., which recognizes the enforceability of compromise agreements approved by the court. The department is unable to point to *any* authority (statutory or otherwise) which holds that inheritance taxes

can be assessed under a will not admitted to probate when another will has been so admitted. Thus, both *Banta* and this case stand comfortably side by side, each rooted in its separate statutory grounds.

We reverse the probate court's order. We direct that the inheritance tax in this estate must be determined, computed and assessed under Helen's 1977 will. We remand for any further appropriate or necessary proceedings relative to this directive.[6]

*By the Court.*—Order reversed and cause remanded.

---

[6]Since we have concluded that the inheritance tax must be assessed under the 1977 will, we need not address the department's cross-appeal which contends that the 1980 testamentary documents presumptively govern the inheritance tax determination.