STATE, Respondent, v. VLAHOS, Appellant.

*No. State 113. Argued March 3, 1971.—Decided March 30, 1971.*
(Also reported in 184 N. W. 2d 817.)

610

For the appellant there was a brief and oral argument by *James Koconis,* attorney, and *John J. Valenti* of counsel, both of Milwaukee.

For the respondent the cause was argued by *James J. Podell,* assistant district attorney of Milwaukee county, with whom on the brief were *Robert W. Warren,* attorney general, and *E. Michael McCann,* district attorney.

BEILFUSS, J.   Prior to the trial the defendant made a timely motion to dismiss the information upon the basis that the statute, sec. 945.03 (2), 1967, under which he was charged and subsequently convicted, is unconstitutional because of its vagueness. The defendant-appellant also asserts that the only issue on this appeal is whether the statute is unconstitutional and void because of vagueness.

Sec. 945.03 (2), Stats. 1967, provides as follows: [1]

"945.03 **Commercial gambling**: Whoever intentionally does any of the following may be fined not more than $5,000 or imprisoned not more than one year or both:
. . .

"(2) Receives, records, or forwards bets or offers to bet or, with intent to receive, record, or forward bets or offers to bet, possesses facilities to do so; . . ."

Both the defendant and the state, by their respective attorneys, have in writing, on file with the record, waived approving or making a transcript of the trial a part of the record but have included at least parts of motions to dismiss.[2] From the proceedings in the record had upon the motions to dismiss and the statement of facts as they appear in counsels' brief, we set forth the following resumé of facts:

The defendant, John Vlahos, is a forty-eight-year-old bartender at the Royal Palm Tavern, 111 East Mitchell Street, Milwaukee, Wisconsin, and has been so employed at the same location for the past twenty-seven years. With the exception of the instant case he has no previous criminal record.

For some time prior to October 9, 1969, Patrolman Allan Perry, of the Milwaukee Police Department, had frequented the Royal Palm Tavern. On Thursday, October 9, 1969, at Officer Perry's request, he placed a $20 bet with the defendant on the outcome of the Green Bay Packer-Detroit Lions football game to be played the following weekend. Officer Perry won the bet and was paid $38 by the defendant on Tuesday, October 14, 1969. On Monday, October 13, 1969, Officer Perry placed a second

---

[1] This section was amended by the 1969 legislature but the amendment was not effective at the time of the incidents in question and has no application in this case.

[2] Because the record does not contain a transcript of the trial we cannot consider the defense of entrapment, raised by a motion, nor the sufficiency of the evidence.

bet with the defendant, this one for $10, on the outcome of the Baltimore Orioles-New York Mets World Series baseball game, and gave the defendant $10. Officer Perry lost this bet. On Tuesday, October 14, 1969, when he collected his winnings from the first bet, Officer Perry placed a third bet with defendant, again for $10 and on the outcome of a subsequent World Series game. Officer Perry lost this third bet. On Friday, October 17, 1969, Officer Perry attempted to place a fourth bet with the defendant but the defendant refused.

On November 7, 1969, Officer Perry signed a John Doe complaint upon which a warrant was issued, and the defendant was arrested and charged with a violation of sec. 945.03 (2), Stats., commercial gambling. On November 8, 1969, the defendant appeared with his attorney in the county court and a preliminary examination was scheduled for November 19, 1969. At the conclusion of the preliminary hearing the defendant moved to dismiss the charge on the grounds that there had been entrapment, and that to constitute commercial gambling the offense must have occurred in a "gambling place" as defined in sec. 945.01 (4) (a). The motion was denied and defendant was bound over for trial.

On December 2, 1969, defendant appeared in circuit court with his attorney and the case was adjourned to January 9, 1970, to hear defendant's motion to dismiss the charge on the grounds that sec. 945.03 (2), Stats., is unconstitutionally vague. On January 9, 1970, the motion was heard and denied, and defendant was arraigned and entered a plea of not guilty.

On May 27, 1970, trial was held before a jury, and prior to submission of the case to the jury defendant again moved to dismiss the charge on the grounds that sec. 945.03 (2), Stats., is unconstitutionally vague. The motion was denied and the case was submitted to the jury, which returned a verdict of guilty.

In oral argument the defendant concedes that he made a bet and that such conduct is illegal under sec. 945.02 (1), Stats., which provides as follows:

"**Gambling.** Whoever does any of the following may be fined not more than $500 or imprisoned not more than 6 months or both:
"(1)  Makes a bet; . . ."

He rightfully asserts that a violation of sec. 945.02 (1), Stats., is a misdemeanor, and a violation of sec. 945.03 (2) is a felony. This is true because of the variance in the scope of the penalty.

He argues that three misdemeanors do not make a felony and that if repetitious betting constitutes commercial gambling the statute is unconstitutionally vague because it does not state how many bets must be made nor within what time span.

This argument might have some weight if we had all of the evidence before us and we were considering the sufficiency of the evidence, but we cannot do so because the record lacks a transcript of the trial.

The conduct condemned as commercial gambling under sub. (2) of sec. 945.03, Stats., is "whoever intentionally:"

"Receives, records, or forwards bets or offers to bet or, with intent to receive, record, or forward bets or offers to bet, possesses facilities to do so; . . ."

In passing upon the constitutionality of a statute, this court has often said that there is a strong presumption of constitutionality favoring a legislative enactment. *State v. Alfonsi* (1967), 33 Wis. 2d 469, 479, 147 N. W. 2d 550; *State v. Woodington* (1966), 31 Wis. 2d 151, 181, 142 N. W. 2d 810, 143 N. W. 2d 753; *United States v. National Dairy Corp.* (1963), 372 U. S. 29, 83 Sup. Ct. 594, 9 L. Ed. 2d 561. The party attacking the statute has the burden of overcoming this presumption and showing it to be unconstitutional. *State v. Kerndt* (1956), 274 Wis. 113, 115, 79 N. W. 2d 113.

In *State v. Woodington, supra,* at page 181, this court framed the issue raised on such an attack upon a statute for vagueness as follows:

". . . Is the statute read as a whole so indefinite and vague that an ordinary person could not be cognizant of and alerted to the type of conduct, either active or passive, that is prohibited by the statute?"

This test closely follows the language used by the United States Supreme Court in discussing the same issue:

". . . 'a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law.' *Connally v. General Construction Co.,* 269 U. S. 385, 391. 'No one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes. All are entitled to be informed as to what the State commands or forbids.' *Lanzetta v. New Jersey,* 306 U. S. 451, 453. . . ." *Cramp v. Board of Public Instruction* (1961), 368 U. S. 278, 287, 82 Sup. Ct. 275, 7 L. Ed. 2d 285.

And in *Boyce Motor Lines v. United States* (1952), 342 U. S. 337, 340, 72 Sup. Ct. 329, 96 L. Ed. 367, the court said:

"A criminal statute must be sufficiently definite to give notice of the required conduct to one who would avoid its penalties, and to guide the judge in its application and the lawyer in defending one charged with its violation. But few words possess the precision of mathematical symbols, most statutes must deal with untold and unforeseen variations in factual situations, and the practical necessities of discharging the business of government inevitably limit the specificity with which legislators can spell out prohibitions. Consequently, no more than a reasonable degree of certainty can be demanded. Nor is it unfair to require that one who deliberately goes perilously close to an area of proscribed conduct shall take the risk that he may cross the line."

Sec. 945.03 (2), Stats., specifies two elements that are necessary to constitute this particular offense: (1) Intent; and (2) receiving, recording, or forwarding bets or offers to bet, or possessing the facilities to do so with the intent to so use them. There is no requirement that one charged with a violation of this section must actually have made a bet, *i.e.*, have made a bargain of the kind defined in sec. 945.01 (1). The making of a bet, or in fact the making of many bets, whether proximate or remote in time, is not prohibited by the language of sec. 945.03 (2). Rather, the section specifies other conduct, therein enumerated, as being prohibited.

The usual application of the principle of uncertainty to void a statute results from vagueness in the words used in the statute itself. However, that is not the argument made here. Defendant apparently concedes that the language of the statute is specific in its meaning, but argues that it leaves out an element of the offense necessary to establish standards for its application, *i.e.*, the time element. This argument is based upon the premise that "making" a bet and "receiving" a bet are the same thing within the meaning of these sections, and that therefore the statute must specify the time within which several bets must be made in order to constitute the continuing offense denominated as a felony. We believe that this premise is fallacious.

Although criminal statutes must meet a rigid test of precision and unambiguity, they should still be construed to give them their fair meaning in accord with the evident intent of the legislature, *United States v. Sullivan* (1948), 332 U. S. 689, 693, 68 Sup. Ct. 331, 92 L. Ed. 297, and language which may otherwise render a statute vague may be considered to have a sufficiently definite meaning because of its common usage or understanding. *Scales v. United States* (1961), 367 U. S. 203, 223, 81 Sup. Ct. 1469, 6 L. Ed. 2d 782. As a general proposition it may be said that the decisions of the United

States Supreme Court upholding statutes as sufficiently certain are based upon the conclusion that they employed language having a meaning well enough known to be understood by those persons whose conduct may fall within the reach of the statutory prohibitions.

The making of a bet is made a misdemeanor by sec. 945.02 (1), Stats. If the making of several bets was intended by the legislature to constitute a felony it would have been a simple matter to use the same language in sec. 945.03 (2), the felony section. But the legislature did not do so. Rather, it made the "receiving" of bets or offers to bet a felony. The distinction between making a bet and receiving bets (or offers to bet) would seem to be well enough understood in common parlance as the distinction between the conduct of the casual social bettor and the conduct of one engaged in the systematic acceptance or reception of bets made by a bettor, casual or otherwise. By definition, the word "receive" connotes the acceptance or taking possession or delivery of something—in this case a bargain, as defined in sec. 945.01 (1). The distinction is certainly well enough known to those persons whose conduct would fall within the purview of these sections. They are commonly known as bookmakers or their agents.

The underlying principle of certainty in a criminal statute is that a person should not be held criminally responsible for conduct which he could not reasonably understand to be proscribed. The statement of this principle would seem to lessen the rigidity of the test by which sec. 945.03 (2), Stats., must be evaluated, since gambling, whether or not it falls within the purview of sec. 945.03 (2), is unquestionably criminal conduct. It is not made so by virtue of this section and there is no question of the possibility of the statute's infringing upon constitutionally protected conduct as is often involved in cases where a statute is challenged because of vagueness. In any event, if the general class of offenses to which the statute

is directed is plainly within its terms the statute should not be stricken down as vague even though marginal cases may exist in which doubts might arise. *United States v. Petrillo* (1947), 332 U. S. 1, 7, 67 Sup. Ct. 1538, 91 L. Ed. 1877. And, if this general class of offenses can be made constitutionally definite by a reasonable construction of the statute the court is under a duty to give it that construction. *United States v. Harriss* (1954), 347 U. S. 612, 618, 74 Sup. Ct. 808, 98 L. Ed. 989; *also see: Screws v. United States* (1945), 325 U. S. 91, 65 Sup. Ct. 1031, 89 L. Ed. 1495.

This course of reasonable construction would seem applicable in the instant case. Sec. 945.03, Stats., is specifically directed to a general class of offenses, gambling which is organized and carried on as a systematic business so as to constitute commercial gambling. The acts of the particular individuals who may be considered the "customers" of such business are not included within its prohibitions, but are specifically covered by sec. 945.02. By restricting sec. 945.03 to the common meaning of its terms the constitutional objection raised by defendant is eliminated, *i.e.*, the person who makes a bet within the meaning of sec. 945.02 (1) cannot graduate to a violation of sec. 945.03 (2) simply because he makes several bets within close proximity of each other.

We conclude that when the language of sec. 945.03 (2), Stats., is measured by common understanding and practice it does give adequate warning of what conduct it proscribes, and that the intent of the section establishes reasonably distinct boundaries for its application and, as such, is not unconstitutional because of vagueness.

*By the Court.*—Judgment affirmed.