STATE, Respondent, v. WACHSMUTH, Appellant.

*No. 75–128–CR. Submitted on briefs May 5, 1976.—*
*Decided June 30, 1976.*
(Also reported in 243 N. W. 2d 410.)

For the appellant the cause was submitted on the brief of *Herrick, Hart, Duchemin & Peterson* of Eau Claire.

For the respondent the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *Frederick J. Erhardt,* assistant attorney general.

HEFFERNAN, J. The principal question on this appeal is whether sec. 176.06 (3), Stats., requires that premises with a retail class B liquor license close for all purposes at 1 a.m. or whether the statute only requires that no alcoholic beverages be served on the premises after 1 a.m.[1]

---

[1] "176.06 Closing hours. No premises for which a wholesale or retail liquor license has been issued shall be permitted to remain open for the sale of liquor:

". . .

"(3) If a retail 'Class B' license, in any county having a population of less than 500,000, between 1 a.m. and 8 a.m., except during that portion of 1959 and each year thereafter for which the standard of time is advanced under s. 175.095 the closing hours shall be between 2 a.m. and 8 a.m., unless the local governing body issuing such license establishes or has established an earlier closing hour, and on January 1 when the closing hours shall be between 3 a.m. and 8 a.m.

"(5) Hotels and restaurants whose principal business is the furnishing of food or lodging to patrons, and bowling alleys and golf courses, shall be permitted to remain open for the conduct of their regular business but shall not be permitted to sell intoxicating liquors during the hours mentioned in sub. (3)."

We conclude that such licensed premises must be closed for all purposes by the statutory closing time and that the failure to so close subjects the licensee to the statutory penalties.

The facts indicate that the tavern in question, the Koolmo's Club and Ballroom, Inc., at Gilman, Wisconsin, was licensed in the name of Virginia Wachsmuth. At approximately 1:25 a.m. on April 3, 1974, a Taylor county deputy sheriff saw several cars in the parking lot of the tavern. The officer found the door of the tavern locked; but upon looking through the window, he saw persons in the barroom with glasses in their hands. He knocked on the door, but there was no response. After sounding his siren, the door was opened. Upon entry into the premises, he found that there were two patrons there, who gave as their reason for lingering that they were finishing a game of pool. One of the patrons testified that the last drink was served before 1 a.m. and stated that they were requested to leave the premises before 1 o'clock.

The trial judge, County Judge PETER J. SEIDL, found the defendant guilty of violating sec. 176.06 (3), Stats., holding that the statute was violated by the presence of patrons in the tavern after the closing hour. He concluded correctly that it was unnecessary to determine that liquor was sold after 1 a.m.

After a remand for sentence, the previously imposed fine of $500 was reduced to $150. The appeal is from the order of the circuit court which affirmed the county court judgment.

It is the defendant's contention that the statute, sec. 176.06 (3), Stats., can only be construed to mean that the premises may remain open if no liquor is sold after 1 a.m. It is the state's contention, while acknowledging

some ambiguity in sec. 176.06 (3), that the statute, when read in context and in conjunction with sec. 66.054 (10) (a), relating to the conditions of operating under a fermented malt beverage license, and in light of the legislative history, requires that the premises be closed for all purposes by 1 a.m.

Surprisingly enough, this court has never specifically addressed the question presented here, to wit, does it constitute a violation of sec. 176.06 (3), Stats., to remain open, *i.e.*, to permit patrons to remain on the premises even though no liquor is proved to have been sold during the period that the licensed premises are to be closed.

This court, however, has in numerous cases indicated by persuasive dicta that sec. 176.06 (3), Stats., requires that the premises be closed for all purposes by 1 a.m. *State v. Potokar* (1944), 245 Wis. 460, 15 N. W. 2d 158, principally addressed the question of whether the statute, now sec. 66.054 (10) (a), denied a defendant equal protection and due process of law when it excluded licensees in counties of more than 500,000 from its closing-hour provisions. The court, after an analysis of legislative history, pointed out that all premises licensed under sec. 176.06 were also required to have a fermented malt beverage license. A condition of the fermented malt beverage license was, and is, that those licensed premises be closed for all purposes after 1 a.m. The court thus reasoned that this was a necessary condition under which a licensee operates pursuant to an alcoholic beverage license and, hence, a premise licensed under sec. 176.06 (3) and necessarily licensed under what is now sec. 66.054 (10) (a) must close for all purposes at 1 a.m. The court stated:

"The effect of the enactment of the above chapter is to require all retail Class B malt-beverage licensees in

counties of less than five hundred thousand population to close between the hours of 1 a.m. and 8 a.m. for all purposes. . . . All Class B retail liquor licensees in counties of less than five hundred thousand must close for all purposes between 1 a.m. and 8 a.m." *Potokar, supra,* page 464.

There are also statements in other opinions of this court that indicate that premises licensed under sec. 176.06 (3), Stats., must be closed by 1 a.m. for all purposes, and not merely closed for the sale of liquor. *Weinberg v. Kluchesky* (1940), 236 Wis. 99, 294 N. W. 530; *State v. Grams* (1942), 241 Wis. 493, 6 N. W. 2d 191; *State v. Badolati* (1942), 241 Wis. 496, 6 N. W. 2d 220.

The attorney general, in an opinion antedating *Potokar,* 32 Op. Atty. Gen. 461, 464 (1943), stated:

". . . permitting patrons to remain in a tavern after closing hours constitutes a violation of sec. 176.06 and sec. 66.05 (10) (hm), Stats. [now 66.054 (10)], even though the door be locked and additional members of the public excluded."

In an opinion following *Potokar,* 35 Op. Atty. Gen. 228 (1946), the attorney general concluded that, while the express language of sec. 176.06 (3), Stats., prohibited class B taverns only from remaining open for the sale of liquor, the fermented malt beverage license required such taverns to be closed for all purposes during the hours specified in that section.

The attorney general thus held specifically what *Potokar* foreshadowed by way of dicta. He construed sec. 176.06 (3), Stats., and what is now sec. 66.054 (10) (a) together and concluded that class B taverns must be closed for all purposes between 1 a.m. and 8 a.m.

This court is not bound by the opinions of the attorney general, nor is it bound by incidental dicta of

earlier cases of this court where it is not apparent that the court was attempting to state comprehensively the law applicable to the general subject. Nevertheless, such court dicta or opinions of the attorney general which are not binding as precedent are persuasive if well reasoned and founded upon appropriate legal principles. We are satisfied that the general rationale of the prior cases and of the attorney general's opinions is correct. Our analysis of the statutes compels the conclusion that these earlier pronouncements properly stated the law.

On its face, sec. 176.06 (3), Stats., is ambiguous, and if we look only to the preamble section of sec. 176.06 —"No premises . . . shall be permitted to remain open for the sale of liquor"—the argument of the defendant herein, that remaining open is not a violation of the statutes, would appear plausible. However, a rule of statutory construction followed by this court is that the meaning of a particular section of the statute must be derived from consideration of the act or statute as a whole. *State ex rel. B'nai B'rith v. Walworth County* (1973), 59 Wis. 2d 296, 308, 208 N. W. 2d 113.

The legislative intent of sec. 176.06 (3), Stats., must therefore be determined in light of sec. 176.06 in its entirety. Following the introductory clause, quoted in part above, appears a series of subsections. Sub. (3) provides, when read in conjunction with the introductory paragraph, that no retail class B premises shall be permitted to remain open for the sale of liquor in any county having a population of less than 500,000 between 1 a.m. and 8 a.m. Sub. (5) is directed to an exclusion of certain activities of some class B licensees from the strictures set forth in sub. (3). In pertinent part it reads:

"(5) Hotels and restaurants whose principal business is the furnishing of food or lodging to patrons, and bowling alleys and golf courses, shall be permitted to remain open for the conduct of the regular business but shall not be permitted to sell intoxicating liquors during the hours mentioned in sub. (3)."

If the defendant's interpretation of sec. 176.06 (3), Stats., is correct, that only the sale of liquor is prohibited during the hours that the premises are to be closed, then the exemption granted to hotels, restaurants, bowling alleys, and golf courses is superfluous. It is apparent, therefore that the legislature concluded that sec. 176.06 in its preamble did not permit licensed premises to remain open, even for purposes other than the sale of liquor, without the specific exemption granted by sub. (5).

A basic rule of this court in construing statutes is to avoid such constructions as would result in any portion of the statute being superfluous. By interpreting the statute as the defendant would do, sub. (5) is superfluous. On the other hand, to read the statute as does the state—to ignore the provision "for the sale of liquor" —would render that portion of the statute superfluous.

An additional ambiguity is presented by sub. (6) of sec. 176.06, Stats. This subsection follows the same introductory paragraph:

"No premises . . . shall be permitted to remain open for the sale of liquor:
". . .
"(6) In any county having a population of 500,000 or more . . . during which [closing hours] no patron or guest shall be permitted to enter or remain in the licensed premises . . . ."

It is therefore clear that, if the statute is construed as the defendant urges, 176.06, sub. (6) is contradictory to the argued interpretation of the preamble—that patrons may be on the premises during closing hours if no alcoholic beverages are sold.

Sec. 176.06 (3), Stats., is ambiguous on its face. Under such circumstances the court may look to the legislative history and intent in determining the meaning of the statute. *State ex rel. Gutbrod v. Wolke* (1971),

49 Wis. 2d 736, 742, 183 N. W. 2d 161. The legislative intent may be ascertained by examination of the language of the statute in relation to its scope, its history, the general statutory context, the subject matter, and the object intended by the legislature to be accomplished or the ill to be remedied. *Ortmann v. Jensen & Johnson, Inc.* (1975), 66 Wis. 2d 508, 520, 225 N. W. 2d 635.

As we have pointed out, an additional ambiguity is created by the interaction of separate but related statutes, sec. 66.054 (10) (a), Stats., relating to fermented malt beverage licenses, and sec. 176.06 (3), relating to intoxicating liquor licenses.

We conclude, as did the attorney general and this court earlier by way of dicta, that these statutes are *in pari materia*. They are *in pari materia* because each statute deals with the closing time of class B licensed premises. Particularly, they are *in pari materia* because the link between the statutes is direct and immediate, for sec. 176.05 (10) (b), Stats., provides:

"No retail 'Class B' liquor license shall be issued to any person who does not have, or to whom is not issued, a Class 'B' retailer's license to sell fermented malt beverages under s. 66.054."

We are thus, in the instant case, dealing with a licensed premise, which by operation of law, must be subject to the strictures of sec. 66.054 (10) (a), Stats. Such premises must be closed for all purposes at 1 a.m.

Moreover, these statutes, secs. 66.054 (10) (a) and 176.06 (3), Stats., were passed in substantially their present form within a few months of each other and appeared in the same session laws in the Laws of 1933. Where statutes containing the same subject matter are passed under these circumstances, they must be considered *in pari materia* and must be construed together and harmonized if possible. *Brunette v. Bierke* (1955), 271 Wis. 190, 72 N. W. 2d 702.

While the defendant, relying on *Odelberg v. Kenosha* (1963), 20 Wis. 2d 346, 122 N. W. 2d 435, argues that these statutes are not *in pari materia, Odelberg* is not dispositive of this case, for therein the court merely held that not all of ch. 176 and not all of sec. 66.054, Stats., were *in pari materia.* This is not true of the instant situation where we are concerned only with the specific closing-hour provisions of class B licensed premises.

Since secs. 66.054 (10) (a) and 176.06 (3), Stats., are indeed *in pari materia,* the court must harmonize them if possible. We said in *State ex rel. Thompson v. Gibson* (1964), 22 Wis. 2d 275, 292, 125 N. W. 2d 636:

". . . where two provisions are susceptible of a construction which will give operation to both, without doing violence to either, it is incumbent on the court to search for a reasonable theory under which to reconcile them so that both may be given force and effect."

Moreover, statutes which are *in pari materia* are not to be interpreted in such a fashion as to indicate a contradictory legislative intent if that can be avoided. *State ex rel. Cabott, Inc. v. Wojcik* (1970), 47 Wis. 2d 759, 177 N. W. 2d 828.

It is reasonably possible, particularly in light of the legislative history, to reconcile these statutes by holding that sec. 176.06 (3), Stats., requires class B premises to close for all purposes at 1 a.m. It would be physically impossible for such premises to be closed for all purposes, as is clearly required by sec. 66.054 (10) (a), and yet allow those premises to remain open for the drinking of previously purchased alcoholic beverages or for other purposes under defendant's interpretation of sec. 176.06 (3). Such a result would be legally absurd and physically impossible and unreasonable. Such absurdity must be avoided. *Cross v. Hebl* (1970), 46 Wis. 2d 356, 174 N. W. 2d 737. To give the interpretation to sec. 176.06 (3) urged by the defendant would permit conduct

clearly contrary to public policy, for as the trial judge pointed out, it would permit patrons to purchase numerous drinks before the closing time and then to drink long into the hours when the premises are to be closed.

The legislative history of these two statutes also demonstrates that the intent of the legislature was to close such premises for all purposes at 1 a.m.

Sec. 176.06 (3), Stats., was enacted as ch. 13 of the Laws Special Session of 1933. It contained substantially the same language as today. The closing-hour provisions for fermented malt beverage licenses were enacted several months prior to the liquor statute. Chapter 207, Laws of 1933, created sec. 66.05 (10) (h) 1, which provided for local option as to closing hours of holders of class B fermented malt beverage licenses.

Under these statutes, then, there was no state law fixing closing hours for the retail sale of fermented malt beverages. Licensed places could remain open for business for twenty-four hours if they so desired unless the municipality, as it had a right to do, fixed an hour for closing.

"Taverns with Class B retail liquor licenses, prior to the passage of ch. 47, Laws of 1943, were prohibited from selling liquor between 1 a.m. and 8 a.m., but they could remain open after 1 a.m. and sell malt beverages; they could continue to carry on their business under Class B retail malt-beverage license after 1 a.m., but were prohibited from selling liquor in the same tavern after that hour." *Potokar*, page 462. *See, also:* 23 Op. Atty. Gen. (1934), pages 191, 200.

Thus, under the statutes enacted in 1933, the provision in sec. 176.06 (3), Stats., "for the sale of liquor," was consistent with sec. 66.05 (10) (h) (1).[2] Class B liquor

---

[2] There was no inconsistency within sec. 176.06, Stats., at this time as there was no provision comparable to sec. 176.06 (5) or 176.06 (6).

premises could remain open after 1 a.m. to sell fermented malt beverages if not prohibited by local law.

However, the legislature adopted amendments to beer and liquor closing-hour laws in 1943. These changes indicate a shift in legislative intent in respect to closing hours.

In 1943, ch. 47 was enacted to amend sec. 176.06, Stats. The major change in that statute was to set different closing hours for counties of more than 500,000 population and those counties with a lesser population. For the smaller counties, the closing hours remained 1 a.m., as under the original act. However, newly created sec. 176.06 (6) provided different closing hours for counties with greater than 500,000 population.[3] Throughout the amending process, the introductory language in sec. 176.06 remained unaltered. Thus, when sub. (6) was added in 1943, the present contradiction between the introductory clause and sub. (6) was created. This conflict, created by focusing only upon amending or creating subsections of the statute, appears to have been the result of a drafting oversight. The legislature intended to remove the "open for the sale of liquor" provision of the statute by creating sub. (6), but inadvertently ignored the language in the introductory clause.

This conclusion is supported by the enactment of ch. 473, Laws of 1943, sec. 66.05 (10) (hm) (now 66.054 (10) (a)) several months after ch. 47. It provided mandatory closing times for holders of class B fermented malt beverage licenses under state laws. The drafting records contain "original instructions," which read:

"9. Stop the sale of beer as well as intoxicating liquors at 1 o'clock a.m. This act not to interfere with village, town or city ordinances requiring this closing at an earlier hour.

---

[3] What is now sec. 176.06 (5), Stats., was then a part of sec. 176.06 (6).

"Limit the sale of beer to the same hours as that of intoxicating liquors."

Thus, the purpose behind the statute which is now sec. 66.054 (10) (a), Stats., was to limit all alcoholic traffic to the same hours with a closing requirement of 1 a.m.

The only possible explanation for the legislative oversight respecting the introductory clause in sec. 176.06, Stats., is that the legislative history of both statutes indicates that the primary focus of the legislature was not directed to the "open for the sale of liquor" clause but rather to the population distinction in both statutes. The legislature could only have overlooked the potential conflict between the introductory clause in sec. 176.06 and the subsections in that statute as well as the newly created sec. 66.05 (10) (hm) (now 66.054 (10)).

Shortly after these legislative changes, this court, as well as the attorney general, concluded that the 1943 amendments of sec. 66.05 (10) and sec. 176.06 required a 1 a.m. closing time for all class B premises. *Potokar, supra,* 32 Op. Atty. Gen. (1943), 461, *supra;* 35 Op. Atty. Gen. (1946), 228, *supra. Potokar* specifically noted that, prior to these amendments, such taverns could remain open past 1 a.m. to sell fermented malt beverages, but that, after the 1943 amendments, the closing time for all purposes became 1 a.m. These decisions constitute a substantially contemporaneous construction of the statutes and are entitled to significant weight in determining legislative intent. *Wauwatosa v. Milwaukee County* (1963), 22 Wis. 2d 184, 125 N. W. 2d 386.

Admittedly, such a construction renders the language, "for the sale of liquor" in the introductory clause to sec. 176.06, Stats., superfluous. However, this court, in order to bring meaning to what was manifestly intended, can reject words in a statute where they are inadvertently used or retained. *Foster v. Sawyer County*

(1928), 197 Wis. 218, 221 N. W. 768; *Neacy v. Board of Supervisors of Milwaukee County* (1910), 144 Wis. 210, 217, 128 N. W. 1063; *State v. Gould* (1973), 56 Wis. 2d 808, 202 N. W. 2d 903; *State ex rel. Gutbrod v. Wolke* (1971), 49 Wis. 2d 736, 183 N. W. 2d 161. In the present case, to harmonize the clear and unequivocal intent of sec. 66.054 (10) (a) with sec. 176.06 (3), to avoid an absurd result, and to fulfill the legislative intent, sec. 176.06 (3) must be construed to require that all class B taverns close for all purposes by 1 a.m.

While defendant points out that penal statutes must be strictly construed, the court has made it clear that this rule does not require a narrow technical meaning be given words in question in such blatant disregard of their context as to frustrate the obvious intent of the legislature. *State ex rel. Gutbrod v. Wolke, supra; see, also: United States v. Corbett* (1909), 215 U. S. 233, 30 Sup. Ct. 81, 54 L. Ed. 173. To construe the statute as defendant suggests would frustrate legislative intent.

Under any interpretation of the statutes, even the defendant's, the conduct of Wachsmuth in remaining open was criminal conduct for which sufficient notice was given. It was such prohibited conduct under sec. 66.054 (10) (a), Stats., which as a matter of law applied to these premises. Defendant does not assert that due process was violated by any vagueness of the statute, and there would be no basis for such assertion.

In a somewhat similar situation we said in *State v. Vlahos* (1971), 50 Wis. 2d 609, 617, 618, 184 N. W. 2d 817:

"The underlying principle of certainty in a criminal statute is that a person should not be held criminally responsible for conduct which he could not reasonably understand to be proscribed. The statement of this principle would seem to lessen the rigidity of the test by which sec. 945.03 (2), Stats., must be evaluated, since gambling, whether or not it falls within the purview of sec. 945.03 (2), is unquestionably criminal conduct. It

is not made so by virtue of this section and there is no question of the possibility of the statute's infringing upon constitutionally protected conduct as is often involved in cases where a statute is challenged because of vagueness. In any event, if the general class of offenses to which the statute is directed is plainly within its terms the statute should not be stricken down as vague even though marginal cases may exist in which doubts might arise. *United States v. Petrillo* (1947), 332 U. S. 1, 7, 67 Sup. Ct. 1538, 91 L. Ed. 1877. And, if this general class of offenses can be made constitutionally definite by a reasonable construction of the statute the court is under a duty to give it that construction. *United States v. Harriss* (1954), 347 U. S. 612, 618, 74 Sup. Ct. 808, 98 L. Ed. 989; *also see: Screws v. United States* (1945), 325 U. S. 91, 65 Sup. Ct. 1031, 89 L. Ed. 1495."

An additional peripheral point is raised, but it is nevertheless of substantial importance, for the defendant contends that the proof was insufficient to show that she was the licensee of the premises. It is argued that the testimony of the police officer that he saw displayed on the tavern wall a license naming the defendant as licensee was objectionable as hearsay. Such display of a license is required by sec. 176.05 (12), Stats.

In any event, the rules of evidence provide that this court or any other court may take judicial notice of adjudicative facts whether requested or not and at any stage of the proceedings. *See:* sec. 902.01 (3) and (6), Stats.[4]

In *Perkins v. State* (1973), 61 Wis. 2d 341, 346, 212 N. W. 2d 141, we stated:

". . . this court has taken judicial notice of state records that are available at the seat of government in Madison that are easily accessible."

---

[4] The general scope of an appellate court's powers in respect to judicial notice is set forth in the article of Justice GEORGE R. CURRIE, 1960 Wisconsin Law Rev. 39, *Appellate Courts Use of Facts Outside of the Record by Resort to Judicial Notice and Independent Investigation.*

■ We have in this case taken judicial notice of the records of the Department of Revenue, Beverage, Cigarette and Motor Fuel division, located at 505 North Segoe Road, Madison, Wisconsin. Those records show that the defendant, Virginia Wachsmuth, was the licensee of a class B retail license for Koolmo's Club and Ballroom, Town of Aurora, Taylor County, from July 1, 1972, to December 16, 1975. She, accordingly, was the licensee of the premises with which we are concerned in the instant case, and, as such licensee, enjoys the privileges and is subject to the liabilities set forth in the statutes.

We conclude, therefore, that Virginia Wachsmuth was held guilty on sufficient evidence of permitting the premises for which she was the licensee to remain open after the time the statute mandates they be closed for all purposes.

While we conclude that, under the statutes, the facts herein demonstrate a violation of the closing law, it is apparent that it would be unreasonable to hold that bona fide employees or workmen performing work on the premises are not permitted to be thereon during the period when the tavern is closed for purposes relating to the dispensing or the drinking of alcoholic beverages. Patrons or customers must leave the premises by 1 a.m. or by whatever time is statutorily set as a closing hour. Internal operations of the business, counting of cash, tallying of receipts, bookkeeping, cleaning of the premises, and renovation or repair obviously were not intended to be within the prohibition of the statute, and such activities need not be confined to such times as the licensed premises are permitted to be open under the fermented malt beverage and intoxicating liquor laws.

*By the Court.*—Judgment affirmed.

ROBERT W. HANSEN, J. *(dissenting)*. The writer would reverse. This lady tavernkeeper was fined and could have been sent to jail on the charge that she violated a criminal statute.[1] That statute makes it a misdemeanor for the holder of a class B retail liquor license to permit licensed premises to remain open for the sale of liquor between 1 a.m. and 8 a.m.[2] When the deputy sheriff arrived at the tavern on the night of the arrest, it was 1:25 a.m. The door was locked but there were three customers in the tavern, two of them finishing a game of pool. No drinks were sold or served by the lady after 1 a.m. So the lady was not really charged with remaining open "for the sale of liquor." She was charged and convicted for not getting the last of her customers out of the place before 1 a.m. But the statute she was charged with violating proscribes only remaining open "for the sale of liquor."

On its face and by its terms, the statute here involved does not set a tavern closing hour. It makes it a criminal offense only to remain open "for the sale of liquor." This the majority opinion very nearly concedes.[3] How-

[1] Sec. 176.06 (3), Stats. Concerning the criminal penalty for violation, *see:* Sec. 176.41, Stats., providing: "Any person who shall violate any of the provisions of this chapter for which a specific penalty is not herein provided shall be fined not more than $500, or imprisoned not more than 90 days, or both. . . ."

[2] Sec. 176.06, Stats., providing in material part: "No premises for which a wholesale or retail liquor license has been issued shall be permitted to *remain open for the sale of liquor:*

". . .

"(3) If a retail 'Class B' license, in any county having a population of less than 500,000, between 1 a.m. and 8 a.m. . . ." (Emphasis supplied.)

[3] Majority opinion stating: "On its face, sec. 176.06 (3), Stats., is ambiguous, and if we look only to the preamble section of sec. 176.06—'No premises . . . shall be permitted to remain open for the sale of liquor'—the argument of the defendant herein, that remaining open is not a violation of the statutes, would appear plausible."

ever, with the aid of a sewing needle and a pair of scissors, the majority construes the statute to require ejecting customers by 1 a.m. as well as stopping the sale of liquor by 1 a.m. This is not how the statute reads, so both the sewing needle and scissors were needed by the majority to retailor the statute so that it would fit the situation here presented.

The sewing needle is used by the majority to stitch together the statute here involved, relating to the sale of liquor (sec. 176.06 (3), Stats.), with a statute relating to the sale of fermented malt beverages (sec. 66.054 (10) (a)). This fermented malt beverages statute provides that retail class B licensed premises are not to remain open between 1 a.m. and 8 a.m.[4] That means that they are not to remain open for any purpose, but the penalty for violation of this second statute is specifically set forth in ch. 66.[5] For staying open at all the tavernkeeper risks the penalty prescribed by sec. 66.054 (15). For staying open for the sale of liquor the tavernkeeper risks the penalty prescribed by sec. 176.41. Here the lady tavernkeeper was not charged with a violation of sec. 66.054. She was charged only with a violation of sec. 176.06. Sewing needle in hand, the majority stitches sec. 66.054 (10) (a) onto sec. 176.06 (3) to change a no

---

[4] Sec. 66.054, Stats., entitled "Licenses for fermented malt beverages," providing in sub. (10) (a) as follows: "In any county having a population of less than 500,000 no premises for which a retail Class 'B' license has been issued shall be permitted to remain open between 1 a.m. and 8 a.m. (except during that portion of 1959 and each year thereafter for which the standard of time is advanced under s. 175.095 the closing hours shall be between 2 a.m. and 8 a.m. unless the local governing body issuing such license establishes or has established an earlier closing hour and on January 1 when the closing hours shall be between 3 a.m. and 8 a.m.). Under this subsection no fermented malt beverages shall be sold, dispensed, given away or furnished directly or indirectly to any person under the age of 18 years at any time between the hours of 1 a.m. and 8 a.m." See: State v. Potokar (1944), 245 Wis. 460, 462, 15 N. W. 2d 158.

[5] See: Sec. 66.054(15) (a), Stats.

sales after 1 a.m. statute into a must close by 1 a.m. statute. The stitching together thus extends sec. 176.06 (3), altering it to cover the case before us. That result violates the rule of strict construction of penal statutes, with doubts as to the reach of such statutes to be resolved in favor of the accused.[6]

After sewing together sec. 176.06 (3) and sec. 66.054 (10) (a), Stats., which the writer would not do,[7] the majority takes scissors in hand and neatly cuts out of sec. 176.06 (3) the qualifying or limiting phrase "for the sale of liquor." The word "sale" is precisely defined in the statute,[8] and, by scissoring it out, the majority gives the sale of liquor statute a far broader reach and application. With the statute here involved definite and unambiguous in its being limited only to remaining open "for the sale of liquor," the writer sees neither right nor reason to do either the stitching or the scissoring. Even if the sewing and cutting could be found appropriate, the writer sees the result thus reached as constitutionally infirm. Our court has held that " '. . . a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application,

[6] See: State v. Columbian Nat. Life Ins. Co. (1910), 141 Wis. 557, 568, 124 N. W. 502; State ex rel. Gaynon v. Krueger (1966), 31 Wis. 2d 609, 619, 143 N. W. 2d 437.

[7] See: Odelberg v. Kenosha (1963), 20 Wis. 2d 346, 351, 122 N. W. 2d 435, this court holding: "Under the Wisconsin statutes fermented malt beverages are specifically excluded from the definition of intoxicating liquors and are dealt with exclusively in sec. 66.054, Stats. Hence, ch. 176, Stats., and sec. 66.054 *are not upon the same matter or subject and are not in pari materia*." (Emphasis supplied.)

[8] Sec. 176.01 (4), Stats., providing: "The term 'sell' or 'sold' or 'sale' includes the transfer, gift, barter, trade or exchange, or any shift, device, scheme or transaction whatever whereby intoxicating liquors may be obtained, but does not include the solicitation of orders for, or the sale for future delivery of, intoxicating liquors."

violates the first essential of due process of law.' "[9] It has firmly held that " '. . . a criminal statute must be sufficiently definite to give notice of the required conduct to one who would avoid its penalties. . . .' "[10] Is that test met by the construction stitched into and scissored out of this statue by the majority opinion? Was this lady tavernkeeper required to also take needle in hand and stitch together this statute with the one located 110 sections earlier in the statute book in order to determine what conduct was being made criminal? Could this lady be expected to also take scissors in hand and clip out the statutory reference to "for the sale of liquor" in order to determine what conduct on her part would subject her to criminal prosecution? The writer thinks not. After all, this lady was a tavernkeeper, not a seamstress by trade and not a revisor of statutes in her spare time. She could not be expected and ought not be required to scissor out a part of the statute and stitch on a different statute to determine what the legislature meant when it enacted sec. 176.06 (3).

[9] *State v. Vlahos* (1971), 50 Wis. 2d 609, 615, 184 N. W. 2d 817, quoting *Cramp v. Board of Public Instruction* (1961), 368 U. S. 278, 287, 82 Sup. Ct. 275, 7 L. Ed. 2d 285. *See also: State v. Woodington* (1966), 31 Wis. 2d 151, 181, 142 N. W. 2d 810, 143 N. W. 2d 753, appeal dismissed (1967), 386 U. S. 9, 87 Sup. Ct. 854, 17 L. Ed. 2d 699, stating the test to be: ". . . Is the statute read as a whole so indefinite and vague that an ordinary person could not be cognizant of and alerted to the type of conduct, either active or passive, that is prohibited by the statute?"

[10] *State v. Vlahos, supra,* at p. 615, quoting *Boyce Motor Lines v. United States* (1952), 342 U. S. 337, 340, 72 Sup. Ct. 329, 96 L. Ed. 367.