NCR CORPORATION, Petitioner-Appellant,

v.

DEPARTMENT OF REVENUE, Respondent.

Court of Appeals

*No. 84–2010. Submitted on briefs November 7, 1985.—*
*Decided January 10, 1986.*
(Also reported in 384 N.W.2d 355.)

For the appellant the cause was submitted on the briefs of *Quarles & Brady,* with *Thomas J. Donnelly, John A. Hazelwood, Mark E. Sanders,* and *David D. Wilmoth* of counsel, of Milwaukee.

For the respondent the cause was submitted on the briefs of *Bronson C. La Follette,* attorney general, with

*Gerald S. Wilcox,* assistant attorney general of counsel, of Madison.

Before Moser, P.J., Wedemeyer and Sullivan, JJ.

WEDEMEYER, J.   NCR Corporation (NCR) appeals from a judgment affirming a Wisconsin Tax Appeals Commission (Commission) decision denying NCR a deduction on its state corporate franchise tax return for federal income taxes paid for the years 1975, 1976, 1977, 1978, and 1980.[1] NCR contends that the Commission's interpretation of sec. 71.04(3), Stats. (1975), to disallow the deduction was erroneous as a matter of law. NCR further argues that, assuming *arguendo* that federal income taxes paid by Wisconsin corporate franchises continued to be deductible, the legislature's 1981 effort to retroactively eliminate the deduction by amending sec. 71.04(3) was unconstitutional. *See* secs. 1090c and 2203(45)(zs), ch. 20, Laws of 1981. Because the legislature clearly intended in 1975 to eliminate the corporate deduction of federal income taxes, we affirm the Commission. We need not address NCR's constitutional challenge to the retroactive impact of the 1981 amendment because our statutory interpretation of the 1975 amendment renders the issue moot.

The event giving rise to this case was a 1975 amendment to secs. 71.04(3) and (3a), Stats. (1973). Prior to 1975, corporations required to file Wisconsin franchise tax returns were allowed to deduct federal income taxes paid within the year covered by the income tax return. The amount of the deduction, how-

---

[1] This appeal emanates from a stipulated consolidation of proceedings docketed as Nos. I-7484, I-8669 and I-8742, and concerns only the deductibility of the federal income tax under sec. 71.04(3), Stats. (1975).

ever, was limited to a sum not to exceed 10% of the corporation's net income for the taxable year.[2]

The 1975 amendment deleted the reference to the deductibility of federal income taxes and repealed the 10% limitation. Secs. 471d and 471f, ch. 39, Laws of 1975. The legislature, however, did not repeal or amend sec. 71.02(1)(c), Stats. (1973), which refers to the basis on which federal income taxes were to be de-

---

[2] Section 71.04, Stats. (1973), read in pertinent part:

**71.04 Deductions from gross income of corporations.** Every corporation, joint stock company or association shall be allowed to make from its gross income the following deductions:
. . .
(3) Taxes other than special improvement taxes paid during the year upon the business or property from which the income taxes is derived, including therein taxes imposed by the state of Wisconsin and the government of the United States as income, excess or war profits and capital stock taxes, including taxes on all real property which is owned and held for business purposes whether income producing or not, provided that such portion of the deduction for federal income and excess profits taxes as may be allowable shall be confined to cash payments made within the year covered by the income tax return, and provided further that deductions for income taxes paid to the United States government shall be limited to taxes paid on net income which is taxable under this chapter; and provided further that income taxes imposed by the state of Wisconsin shall accrue for the purpose of this subsection only in the year in which such taxes are assessed. [Emphasis added.]

(3a) The deduction for all United States income, excess or war profits and defense taxes shall be limited to a total amount not in excess of 10 per cent of the taxpayer's net income of the calendar or fiscal year as computed without the benefit of the deduction for said United States income, excess or war profits and defense taxes, and before the deductions of amounts permitted by subsection (5) of this section. In no event shall any taxpayer be permitted hereunder a total deduction in excess of the actual amount of United States income, excess or war profits and defense taxes paid, and otherwise deductible.

445

ducted, or sec. 71.11(8)(b), Stats. (1973), which incorporates the rules set forth in sec. 71.02(1)(c). Thus, the relevant 1975–81 statutory sections at issue read in part:

71.02 **Definitions** (1) Definitions Applicable To Corporations. As used in this chapter:

. . . .

(c) "Paid" or "actually paid" are to be construed in each instance in the light of the method used in computing taxable income whether on the accrual or receipt basis; but the deduction for federal income and excess profits taxes shall be confined to cash payments made within the year covered by the income tax return.

. . . .

71.04 **Deductions from gross income of corporations.** Every corporation ... shall be allowed to make ... the following deductions:

. . . .

(3) Taxes other than special improvement taxes paid during the year upon the business or property from which the income taxed is derived, including therein taxes imposed by the state of Wisconsin as income taxes.

. . .

. . . .

71.11 **Administrative provisions; penalties.**

. . . .

(8) Method of Accounting; General Rule; Corporations.

. . . .

(b) In computing a corporation's taxable income for any taxable year, commencing after December 31, 1953, if such computation is under a method of accounting different from the method under which the taxpayer's taxable income for the preceding taxable year was computed, then there shall be taken into account those

adjustments which are determined to be necessary solely by reason of the change in order to prevent amounts from being duplicated or omitted, except there shall not be taken into account any adjustment in respect of any taxable year to which this section does not apply, and except that *this rule shall not modify or change the rule as to federal income* and excess profits *taxes set forth in s. 71.02(1)(c).* [Emphasis added.]

In challenging the assessment made by the state Department of Revenue (Department), NCR contends that the statutory provisions quoted above, when read together, unambiguously allow a full deduction for federal income taxes paid. The Commission, however, ruled that sec. 71.04(3), Stats. (1975), is ambiguous and determined that the legislature's intent was to eliminate the deduction in its entirety. In addition, the Commission determined that acceptance of the statutory interpretation advanced by NCR would lead to an absurd and unreasonable result. In affirming the Commission, the trial court essentially utilized the same rationale.

The standard of review of an agency's conclusion of law is the same for this court as for the trial court: neither court is bound by the agency's conclusion. *See West Bend Education Association v. WERC,* 121 Wis. 2d 1, 11, 357 N.W.2d 534, 539 (1984). Nor, for that matter, is this court bound by the decision of the trial court since the meaning of a statute is a question of law which we decide independently. *Id.* Nevertheless, we recognize that the construction and interpretation of a statute by an administrative agency charged with the responsibility of applying the law is entitled to great

weight. *Wisconsin's Environmental Decade, Inc. v. DILHR,* 104 Wis. 2d 640, 644, 312 N.W.2d 749, 751 (1981). A reviewing court ought not reverse an agency's interpretation of a statute if there exists a rational basis for the agency's conclusion, *id.,* even if we do not entirely agree with the agency's rationale.

In essence, NCR argues that there is no rational basis for the Commission's interpretation of sec. 71.04(3), Stats. (1975). We disagree. The threshold question to be addressed by this court when construing a statute is whether the statute is ambiguous. *State v. Wittrock,* 119 Wis. 2d 664, 669, 350 N.W.2d 647, 650 (1984). A statute is ambiguous if reasonable persons could disagree as to its meaning. *Id.* NCR correctly notes that even though it disagrees with the Commission about the meaning of sec. 71.04(3), Stats. (1975), this failure to agree does not automatically require a finding of ambiguity. *Id.* at 670, 350 N.W.2d at 650–51. Rather, NCR focuses on the "plain meaning" of the above-quoted statutory language, along with the simultaneous repeal of sec. 71.04(3a), Stats. (1973), to assert that the real effect of the 1975 amendment was not to eliminate the deduction but to eliminate the· *10% cap* on the deduction. Thus, NCR contends that it should be allowed a deduction for the full amount of the federal income taxes it paid in the 1975–1980 period.

The gist of NCR's argument is that sec. 71.04(3), Stats. (1975), provided for the deduction of "[t]axes . . . upon the business or property from which the income taxed is derived, *including therein* taxes imposed by the state of Wisconsin as *income taxes. . . .*" (Emphasis by NCR.) Because the legislature did not delete the references to federal income taxes in secs. 71.02(1)(c) and

71.11(8)(b), Stats. (1975), and because this court must consider "the entire section and related sections" in construing the statute, *State v. Clausen,* 105 Wis. 2d 231, 244, 313 N.W.2d 819, 825 (1982), NCR claims that even after the 1975 amendments ch. 71 clearly and unambiguously allowed corporations to deduct their federal income taxes. NCR further argues that because the Commission itself, from 1921 to 1981, construed "[t]axes . . . upon the business or property from which the income taxed is derived" to include income taxes paid to other states and foreign countries, it necessarily follows that income taxes paid to the federal government are deductible. NCR concludes that because the amended statute is plain and unambiguous neither the Commission nor this court may use extrinsic aids to construction. We disagree.[3]

---

[3] Both the Commission and the trial court found that sec. 71.04(3), Stats. (1975), is ambiguous on its face. Both tribunals recognized that ambiguity can be created by the interaction of two separate statutes as well as by the interaction of various words and the structure of the statute itself. *Morrissette v. DeZonia,* 63 Wis. 2d 429, 436, 217 N.W.2d 377, 381 (1974). Both also acknowledged that statutes relating to the same subject matter should be read together, harmonized where possible, and not interpreted in such a way as to indicate a contradictory legislative intent if possible. *State v. Wachsmuth,* 73 Wis. 2d 318, 325–26, 243 N.W.2d 410, 414–15 (1976). The trial court, however, reiterated the *Wachsmuth* court's admonition that only when two provisions can be construed to make both operative, without doing violence to either, that it is the responsibility of the court to reconcile them. *Id.* at 326, 243 N.W.2d at 415 (citation omitted). Thus, the trial court declared that if secs. 71.02(1)(c), 71.04(3), and 71.11(8)(b), Stats. (1975), were interpreted as NCR wished, such an interpretation would "impose a meaning to sec. 71.04(3) which is the exact opposite of the legislative intent." In addition, the court noted that sec. 71.02(1)(c) is only

NCR's argument is more concerned with chronology than with the substance and content of the Commission's decision. NCR incorrectly argues that linguistic methodology holds sway over legislative intent. On the contrary, the primary purpose of statutory interpretation is to determine and give effect to legislative intent. *Ball v. District No. 4 Area Board,* 117 Wis. 2d 529, 537–38, 345 N.W.2d 389, 394 (1984). To achieve this task we initially examine the language of the statute itself. If the meaning of the statute is clear on its face, this court ought not look outside the statute in applying it. *Id.* at 538, 345 N.W.2d at 394. Because, however, "whether . . . the words of a statute are clear is itself not always clear," N. Singer, 2A *Sutherland on Statutes and Statutory Construction* § 46.04 at 86 (Sands rev. 4th ed. 1984) (footnote omitted), the plain meaning rule is not without exceptions.

As our supreme court recently reiterated:

It would be anomalous to close our minds to persuasive evidence of intention on the ground that reasonable men could not differ as to the meaning of the words. Legislative materials ... can scarcely be deemed to be incompetent or irrelevant. ... The meaning to be ascribed to [a legislative act] can only be derived from a considered weighing of every relevant aid to construction.

definitional and does not create the deduction at issue or any other substantive right. The trial court therefore concluded that reading these sections together created a statutory ambiguity and turned to legislative history for guidance. We neither reject nor adopt this reasoning, but cite it as further support for the proposition that in the instant case it is necessary to plumb the legislature's intent in striking the express words of deductibility of taxes paid to the United States government.

*Higher Educational Aids Board v. Hervey,* 113 Wis. 2d 634, 641 n.9, 335 N.W.2d 607, 611 n.9 (1983) (quoting *United States v. Dickerson,* 310 U.S. 554, 562 (1940)).[4] Professor Singer, in discussing the "limits of literalism," observes that "contrary to the traditional operation of the plain meaning rule, courts are increasingly willing to consider other indicia of intent and meaning *from the start* rather than beginning their inquiry by considering only the language of the act." 2A *Sutherland,* § 46.07 at 110 (emphasis added); *see also City of Madison v. Town of Fitchburg,* 112 Wis. 2d 224, 236, 332 N.W.2d 782, 787 (1983) (the spirit or intent of a statute should govern over the literal or technical meaning of the language used). This approach makes an eminent amount of common sense and may illuminate legislative purpose rather than becloud it. As this court recently reiterated:

When an absurdity or obscurity poses a threat: "[T]he court may look to the history of the statute, to all the circumstances intended to be dealt with, to the evils to be remedied, to its reason and spirit, to every part of the enactment, and may reject words, or read words in place which seem to be there by necessary or reasonable inference, and substitute the right word for one clearly wrong, and so find the real legislative intent, though it be out of harmony with, or even contradict, the letter of the enactment."

---

[4] The *Dickerson* court, in turn, footnoted the apologia of one of its exasperated predecessors: "Where the mind labors to discover the design of the legislature, it seizes everything from which aid can be derived." 310 U.S. 554, 562 n.6 (quoting *United States v. Fisher,* 6 U.S. (2 Cranch) 358, 386 (1804)).

*In the Matter of M.J.,* 122 Wis. 2d 525, 532, 362 N.W.2d 190, 194 (Ct.App. 1984) (quoting *Pfingsten v. Pfingsten,* 164 Wis. 308, 313, 159 N.W. 921, 923 (1916)).[5]

In the absence of evidence to the contrary, it is a familiar rule of construction that the studied omission of a word or words in the reenactment or revision of a statute indicates an intent to alter its meaning. *Pittman v. Lieffring,* 59 Wis. 2d 52, 64, 207 N.W.2d 610, 615 (1973). Here, it is undisputed that the legislature deleted from sec. 71.04(3), Stats. (1973), the express language which provided for the deductibility of taxes imposed by "the government of the United States" and repealed the 10% deduction cap in sec. 71.04(3a), Stats.

---

[5] When confronted with what initially appeared to be plain statutory language, Justice Roujet D. Marshall of our supreme court observed:

There must be some uncertainty of sense, else the natural and ordinary meaning of the words must prevail. When there is no such uncertainty, to resort to judicial construction to extend or restrict the meaning of words and give to a legislative enactment a character other than that which its language plainly indicates, it is said, "would be extremely dangerous, for there would be no law, however definite and precise in its nature, which might not thereby be rendered useless." But courts are obliged in many cases to go further, otherwise many wise legislative enactments would lead to mischievous results. Uncertainty of sense does not alone spring from uncertainty of expression. It is always presumed, in regard to a statute, that no absurd or unreasonable result was intended by the legislature. Hence if, viewing a statute from the standpoint of the literal sense of its language, it is unreasonable or absurd, an obscurity of meaning exists, calling for judicial construction. We must, in that event, look to the act as a whole, to the subject with which it deals, to the reason and spirit of the enactment, and thereby, if possible, discover its real purpose. . . .

*Rice v. Ashland County,* 108 Wis. 189, 192, 84 N.W. 189, 190 (1900) (citations omitted).

(1973). To accede to NCR's contention that sec. 71.04(3) had the same meaning after the 1975 amendment would presume no purpose to the statutory revision. Furthermore, had the legislature intended only to repeal the 10% limitation on the deduction, such intention could have been accomplished by repealing sec. 71.04(3a) without revising and deleting language in sec. 71.04(3). We therefore conclude that the trial court did not err in examining the legislative history behind the 1975 revision to ch. 71.

The Commission concluded as a matter of law that "the legislative objective in [the] 1975 amendment to sec. 71.04(3) and repeal of sec. 71.04(3a) was to eliminate entirely the deduction formerly allowed to corporations for federal income taxes paid, and, thereby, to generate additional revenues of $38 million for the 1975–77 biennium." The Commission further concluded that this repeal provision "was unaltered during the legislative process and adopted verbatim by the legislature." At all points in the legislative process, budget analyses prepared by the Legislative Reference Bureau and the Legislative Fiscal Bureau clearly identified the proposed statutory change as the elimination of a tax deduction for the purpose of increasing revenues. These analyses are indicative of legislative intent. *See McLeod v. State,* 85 Wis. 2d 787, 792, 271 N.W.2d 157, 160 (Ct.App. 1978).

The conclusions of the Commission are based on extensive findings of fact.[6] Our independent review of

---

[6] Among the Commission's pertinent findings:

19.   On January 8, 1974, the Department of Revenue submitted to the Budget Director for the State of Wisconsin proposed tax law changes that would produce additional revenue for the state. Such

the record confirms that there is substantial and credible evidence to support the Commission's findings and,

proposals were to be included in the 1975–77 budget bill. One of the proposed items was the elimination of the deduction for federal income taxes by corporations. It was estimated that the repeal of the deduction then allowed corporations for federal income taxes paid would raise approximately $36,000,000 in additional revenue during the 1975–77 biennium.

20. A department draft of legislation to repeal the corporation deduction for federal income taxes was attached to legislation proposed by the Department of Revenue for inclusion in the budget bill.

21. By memorandum dated May 2, 1975, the Wisconsin Legislative Fiscal Bureau submitted to members of the Joint Committee on Finance a number of potential revenue sources to balance the 1975–77 biennial budget. One of such revenue sources was the repeal of the deduction allowed corporations for federal income tax paid. The additional amount of revenue which would be produced by this tax change was determined to be $38,000,000.

22. Three of the aforementioned revenue sources were put into a motion and adopted by the Joint Committee on Finance. One of such items was the repeal of the deduction allowed corporations for federal income tax paid.

23. The draft of legislation to repeal the deduction for federal income tax was included in Assembly Substitute Amendment 1 to Assembly Bill 222, the Governor's budget bill. This document was prepared by the Legislative Fiscal Bureau in consultation with the Legislative Reference Bureau. According to the practice and procedure followed with respect to such legislation, the Department of Revenue would submit proposed statutory language to the Joint Committee on Finance. The draft would be reviewed by a member of the Legislative Fiscal Bureau and by an attorney in the Legislative Reference Bureau to determine if it would accomplish the intent of the Finance Committee and to be sure that it was compatible with the rest of the statutes.

24. All members of the legislature, and others who followed the budget process, were provided with the document entitled "1975–77 Biennial State Budget, Summary of Assembly Substitute Amendment 1 to AB 222," prepared by the Legislative Fiscal Bureau. This

therefore, its conclusions of law. In particular, we concur with the Commission's conclusion that adoption of

document outlines the changes that have been made to the Governor's bill, the intent of those changes and the fiscal impact of the changes. One of the items included in such Summary was the $38,000,000 of expected revenue that would come about with the repeal of the deduction allowed corporations for federal income taxes.

25. Assembly Substitute Amendment 1 to AB 222 was the Joint Finance Committee version which went to the Assembly. ... The Senate and the Assembly disagreed on certain provisions of the budget, so a Committee of Conference was appointed. The Committee of Conference offered Conference Substitute Amendment 1 to 1975 Assembly Bill 222.

26. The Legislative Reference Bureau prepared a document entitled "Appendix to Assembly Bill 222, Conference Substitute Amendment 1, Report of Joint Survey Committee on Tax Exemptions." The Joint Survey Committee on Tax Exemptions is a legislative committee to which is referred all legislation that will have an impact on the state finances and additional revenues. The report of such Committee seeks to insure that the provisions of the budget bill are accurate, correct and compatible with other statutory provisions, and to offer an opinion on the legality of the legislation that is being considered. Item 6 of such report states in part that "The deduction which corportions may claim for federal income taxes paid would be eliminated."

27. The document entitled "1975–77 Biennial State Budget, Comparative Summary of Governor's, Joint Finance, Assembly, Senate and Conference Committee Budgetary Provisions, Assembly Bill 222," is a document prepared by the Legislative Fiscal Bureau after the budget has gone all the way through the legislative process, from the Governor's recommendations through the Joint Committee on Finance, the Assembly, the Senate and the Committee of Conference. That document includes provisions relating to the Department of Revenue and the identification of the $38,000,000 as the amount that would be generated as additional revenue to the state treasury with the repeal of the law which allowed corporations to deduct federal income taxes. The document indicates that this provision was added by the Joint Committee on Finance and stayed in the budget bill all the way through the process.

NCR's interpretation would lead to an absurd and unreasonable result. It is uncontroverted that legislators believed they were enacting a revenue-*enhancing* amendment, yet NCR acknowledges that its interpretation of the amendment would entail a revenue *loss* to the state of at least $100 million. Courts must look to the common sense meaning of a statute to avoid unreasonable and absurd results. *Kania v. Airborne Freight Corp.,* 99 Wis. 2d 746, 766, 300 N.W.2d 63, 71 (1981) (citation omitted). To adopt NCR's argument we would have to adopt a statutory construction in derogation of common sense. Because statutes cannot be construed in derogation of common sense, *Clausen,* 105 Wis. 2d at 246, 313 N.W.2d at 826, and because the requisite rational basis exists for the Commission's interpretation of the statute, we reject NCR's "plain meaning" argument and affirm both the Commission and the trial court.

■

One additional matter must be considered. NCR argues that the Department's interpretation of sec. 71.04(3), Stats. (1975), renders superfluous the reference to the federal income tax deduction in sec. 71.02(1)(c), Stats. (1975). We agree that generally a statute should be construed so that no word or clause is rendered surplusage. *Donaldson v. State,* 93 Wis. 2d 306, 315, 286 N.W.2d 817, 821 (1980). As Justice Roujet D. Marshall of our supreme court declared many years ago, however:

---

28. The language of the [Department's] original draft, see paragraph 20, above, remained unchanged throughout the legislative process and is the same language as was finally enacted into law as section 471d of Chapter 39, Laws of 1975.

[This] law is a striking illustration of the careless legislation courts have to deal with. If it were not for the instrumentalities, called rules for construction, which enable courts to get sense out of an enactment, if any was put there by the lawmakers and not hidden so as to be undiscoverable, much written law would be found on our statute books which could not be given the legislative purpose, and some which could not be given any effect at all.

*Neacy v. Board of Supervisors,* 144 Wis. 210, 215, 128 N.W. 1063, 1065 (1910). Justice Marshall then cited "[m]any examples of interpolation and rejection and transposition of words to render a legislative enactment capable of being given a sensible effect in accordance with the purpose of the lawmakers." *Id.* at 216–17, 128 N.W. at 1066. Consistent with our earlier comments regarding the state of this record, we regard the reference to the federal income tax in secs. 71.02(1)(c) and 71.11(8)(b), Stats. (1975), as regrettable surplusage serving no reasonable purpose other than to ostensibly frustrate the obvious legislative intent.[7]

    *By the Court.*—Judgment affirmed.

---

[7] The failure to delete this language may be regarded as a "legislatively dropped stitch in the statute." *See Scharping v. Johnson,* 32 Wis. 2d 383, 393–94 n.6, 145 N.W.2d 691, 697 n.6 (1966).